**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Case No.  2:25-cr-122-JKW-DEM |
| | * | |
| LETITIA A.  JAMES, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| *    *    *    *    *    *    * | | |

**ATTORNEY GENERAL LETITIA A.  JAMES' MOTION AND MEMORANDUM**
**IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT AND ENJOIN THE**
**PROSECUTION**

Attorney General Letitia A. James, by and through undersigned counsel, pursuant to Federal Rule of Criminal Procedure 12(b) moves this Court to dismiss the Government's indictment because purported interim U.S. Attorney Lindsey Halligan had no authority to bring the charges in this case.  As explained further below, Ms. Halligan's purported appointment as interim U.S. Attorney was invalid under 28 U.S.C § 546 and in violation of the Appointments Clause of the United States Constitution.

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................... 1

BACKGROUND ................................................................................................................... 1

    A.   Factual Background ................................................................. 1

    B.   Legal Background................................................................. 4

ARGUMENT .......................................................................................................................... 6

  I.   Ms. Halligan's Purported Appointment as Interim United States Attorney is Unlawful ... 6

    A.   Ms. Halligan's Appointment is Invalid and Unlawful Under Section 546..................... 6

    B.   As Ms. Halligan's Appointment Occurred Without Statutory Authorization, it Violates the Appointments Clause. ................................................................. 11

  II.   Ms. Halligan's Unlawful Appointment Warrants Dismissal of The Indictment and an Injunction Barring Ms. Halligan From Continuing to Perform the Functions and Duties of Interim U.S. Attorney .............................................................................. 12

    A.   This Court Should Dismiss the Indictment.................................................. 12

    B.   This Court Should Enjoin Ms. Halligan From Prosecuting Cases, Supervising Prosecutions, and Performing Any of the Other Functions or Duties of Interim U.S. Attorney ................................................................. 16

CONCLUSION ..................................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) ........................................................ 15

*Bates v. United States*, 522 U.S. 23 (1997) ................................................................................ 7

*Chapman v. California*, 386 U.S. 18 (1966) .............................................................................. 16

*Collins v. Yellen*, 594 U.S. 220 (2021) ..................................................................................... 15

*Dean v. United States*, 556 U.S. 568 (2009) ............................................................................... 7

*Edmond v. United States*, 520 U.S. 651 (1997) .................................................................... 4, 12

*Iselin v. United States*, 270 U.S. 245 (1926) ............................................................................... 8

*Kelley v. United States*, 989 F.3d 67 (1st Cir. 2021) ................................................................ 14

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ................................................... 11

*Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237 (2018) ................................................... 1, 4, 13, 15

*Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825 (1988) ............................... 10

*Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024) ...................................................... 7

*Myers v. United States*, 272 U.S. 52, 159 (1926) ......................................................................... 4

*Ryder v. United States*, 515 U.S. 177 (1995) ............................................................................. 15

*Trump v. United States*, 603 U.S. 593 (2024) ............................................................................ 12

*Sherwood v. Sutton*, 21 F. Cas. 1303 (C.C.D.N.H. 1828) ......................................................... 10

*United States v. Bennett*, 464 Fed. Appx. 183 (4th Cir. 2012) .................................................. 13

*United States v. Davila*, 569 U.S. 597 (2013) ........................................................................... 16

*United States v. Durham*, 941 F.2d 886 (9th Cir. 1991) ............................................................ 14

*United States v. Garcia-Andrade*, 2013 WL 4027859 (S.D. Cal. Aug. 6, 2013) ........................ 15

*United States v. Germaine*, 99 U.S. 508 (1879) .......................................................................... 4

*United States v. Giraud*, 2025 WL 2416737 (D.N.J. Aug. 21, 2025) .................................... 9, 11

*United States v. Hansen*, 599 U.S. 762 (2023) ............................................................ 8

*United States v. Plesinski*, 912 F.2d 1033, 1038 (9th Cir. 1990)................................... 14

*United States v. Providence Journal Co.*, 485 U.S. 693 (1988) ........................................ 1, 12, 13

*United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024) .................................... 12

*United States v. Underwood*, 129 F.4th 912 (6th Cir. 2025) ......................................... 14

**Statutes**

28 U.S.C. § 516.................................................................................................. *passim*

28 U.S.C. § 541.......................................................................................................... 10

28 U.S.C. § 546........................................................................................................ 1, 2

Fed. R. Crim. P. 1 ..................................................................................................... 13

Fed. R. Crim. P. 7 ..................................................................................................... 13

Fed. R. Crim. P. 12 .................................................................................................... 1

Fed. R. Crim. P. 52 .................................................................................................... 16

H.R. Rep. No. 110-58 at 6 (2007)............................................................................ 5, 9

Judiciary Act of 1789, 1 Stat. 73 § 35...................................................................... 4, 10

Pub. L. No. 109-77, Title V, § 502, 120 Stat. 192, 246 (2006) ................................ 5, 9

Pub. L. No. 110-34, § 2, 121 Stat. 224 (2007)........................................................ 5, 9

**Other Authorities**

A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts (2012) .................... 8, 9

Alanna Durkin Richer & Eric Tucker, *US attorney under pressure to charge Letitia James in mortgage fraud case has resigned*, Associated Press (Sept. 19, 2025) ...................................... 2

Anna Bower, *"Anna, Lindsey Halligan Here."*, *Lawfare* (October 20, 2025). ............................ 4

Betsey Klein, *Trump calls on Attorney General Bondi to use power of the Justice Department more aggressively*, CNN (Sept. 20, 2025). .......................................................................... 3, 16

*Definition of Vacancy for the Purpose of Interim Appointment of United States Attorneys pursuant to 28 U.S.C. 546, as amended*, Office of Legal Counsel (Nov. 13, 1986). ............... 11

Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527 (1947)  10

Glenn Thrush et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sept. 19. 2025).................................................................................... 2, 3

*In re Appointment of Erik S. Siebert as United States Attorney*, Order of Appointment, United States District Court for the Eastern District of Virginia (May 9, 2025).................................... 2

James A. Heilpern, *Interim United States Attorneys*, 28 Geo. Mason L. Rev. 187 (2020). ..... 5, 10
Jeremy Roebuck, *Trump's new demands on Justice Department raise alarm among prosecutors*, Wash. Post (Sept. 22, 2025)......................................................................................................... 3

Josh Dawsey et al., *Inside the Justice Department Where the President Calls the Shots*, Wall St. J. (Oct. 8, 2025)................................................................................................................... 3, 16

Katherine Faulders et al., *Trump poised to fire US attorney for resisting effort to charge NY AG Letitia James: Sources*, ABC News (Sept. 19, 2025) ................................................................ 2

Kristin Holmes, et al., *Lindsey Halligan didn't coordinate NY AG Letitia James indictment with Pam Bondi's DOJ*, CNN (Updated Oct 10, 2025).................................................................... 14

Press Release: Erik Siebert appointed Interim U.S. Attorney for the Eastern District of Virginia, United States Attorney's Office for the Eastern District of Virginia (Jan. 21, 2025)................. 2

Salvador Rizzo et al., *Top Virginia prosecutor resigns amid criticism over Letitia James investigation*, Wash. Post (Sept. 20, 2025) ................................................................................. 2

Samuel L. Bray, *The Mischief Rule*, 109 Geo. L.J. 967 (2021).................................................. 10

## Constitutional Provisions

U.S. Const. Art. II, § 2, cl. 2 ................................................................................................ 4, 12

## INTRODUCTION

Defendant Letitia A. James, the Attorney General of New York, submits this motion to dismiss the indictment in this case under Federal Rule of Criminal Procedure 12(b)(3)(A) because the charges against her were brought by an individual who had no authority to litigate this case on behalf of the United States.  Lindsey Halligan, the prosecutor who sought and obtained this indictment, was not lawfully appointed as interim United States Attorney for the Eastern District of Virginia.  Her purported appointment violates both 28 U.S.C. § 546 and the Appointments Clause of the Constitution.  Nor was Ms. Halligan authorized to represent the United States under any other title or designation.  Ms. Halligan thus lacked the power to present this case to the grand jury or sign this indictment, and she cannot continue to supervise this prosecution.

The defects in Ms. Halligan's appointment mandate dismissal of this indictment.  First, this Court lacks jurisdiction because no "proper representative of the Government" had a role in obtaining the indictment.  *See United States v. Providence Journal Co.*, 485 U.S. 693, 707–08 (1988).  Second, even if this Court were to possess jurisdiction, an officer's actions are null and void if her purported appointment violated the Appointments Clause.  *See Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 251 (2018).  And third, because this indictment would not have been sought or obtained absent Ms. Halligan's unlawful appointment under the guise of 28 U.S.C. § 546, the indictment's flaws cannot be brushed aside as harmless error.  This Court must reject the Executive Branch's brazen attempt to sidestep the constitutional and statutory limitations on the appointment of U.S. Attorneys.

## BACKGROUND

### A.    Factual Background

On January 20, 2025, the Senate-confirmed U.S. Attorney for the Eastern District of Virginia, Jessica Aber, resigned.  One day later, the U.S. Attorney General Pamela Bondi

1

appointed Erik Siebert as interim U.S. Attorney pursuant to 28 U.S.C. § 546.[1]  On May 6, 2025, President Trump submitted Mr. Siebert's nomination to the Senate.  Mr. Siebert's interim appointment expired on May 21, 2025, which marked "120 days after appointment by the Attorney General under [Section 546]." 28 U.S.C. § 546(c)(2).  At that time, the district court judges of the Eastern District of Virginia exercised their appointment authority under Subsection 546(d) and to unanimously decided to retain Mr. Siebert as interim U.S. Attorney.[2]

Mr. Siebert ultimately landed in President Trump's crosshairs.  Reports indicate that in the weeks preceding this indictment, Mr. Siebert informed senior Justice Department officials that there was insufficient evidence to charge Attorney General James.[3]  His stance "set off a push by some [Administration] officials to remove him from his post."[4]  On September 19, 2025, President Trump stated that he wanted Siebert "out."[5]  He told reporters that he believed Attorney General James was "very guilty of something," an assessment that reportedly contradicted the views of

---

[1] Press Release: Erik Siebert appointed Interim U.S. Attorney for the Eastern District of Virginia, United States Attorney's Office for the Eastern District of Virginia (Jan. 21, 2025), https://perma.cc/SZ2Z-KQ6P.

[2] *In re Appointment of Erik S. Siebert as United States Attorney*, Order of Appointment, United States District Court for the Eastern District of Virginia (May 9, 2025), https://perma.cc/2UM3-LX2X.

[3] Katherine Faulders et al., *Trump poised to fire US attorney for resisting effort to charge NY AG Letitia James: Sources*, ABC News (Sept. 19, 2025), https://abcnews.go.com/US/trump-poised-fire-us-attorney-resisting-effort-charge/story?id=125700904; Alanna Durkin Richer & Eric Tucker, *US attorney under pressure to charge Letitia James in mortgage fraud case has resigned*, Associated Press (Sept. 19, 2025), https://apnews.com/article/justice-department-letitia-james-siebert-trump-9ec1a96c05fa77d8acc558bd803622a2; Salvador Rizzo et al., *Top Virginia prosecutor resigns amid criticism over Letitia James investigation*, Wash. Post (Sept. 20, 2025), https://www.washingtonpost.com/national-security/2025/09/19/trump-letitia-james-erik-siebert-virginia/; Glenn Thrush et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sept. 19. 2025), https://www.nytimes.com/2025/09/19/us/politics/erik-siebert-comey-letitia-james.html.

[4] Rizzo et al., *Top Virginia prosecutor resigns amid criticism over Letitia James investigation*, Wash. Post (Sept. 20, 2025).

[5] *Id.*

both Mr. Siebert and Deputy Attorney General Todd Blanche.[6]  Mr. Siebert resigned hours after

President Trump called for his ouster.[7]

On September 20, 2025, President Trump posted a statement on social media directly

urging Attorney General Bondi to prosecute Attorney General James, as well as former FBI

Director James Comey and Senator Adam Schiff.[8]  The post read:

> Pam: I have reviewed over 30 statements and posts saying that, essentially, "same
> old story as last time, all talk, no action. Nothing is being done. What about Comey,
> Adam "Shifty" Schiff, Leticia??? They're all guilty as hell, but nothing is going to
> be done." Then we almost put in a Democrat supported U.S. Attorney, in Virginia,
> with a really bad Republican past.  A Woke RINO, who was never going to do his
> job. That's why two of the worst Dem Senators PUSHED him so hard. He even
> lied to the media and said he quit, and that we had no case. No, I fired him, and
> there is a GREAT CASE, and many lawyers, and legal pundits, say so. Lindsey
> Halligan is a really good lawyer, and likes you, a lot. We can't delay any longer,
> it's killing our reputation and credibility. They impeached me twice, and indicted
> me (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED, NOW!!!
> President DJT.[9]

At the White House that same evening, President Trump spoke to reporters about the social media

post and stated, "I just want people to act. They have to act," adding, "We have to act fast."[10]

Less than 48 hours after President Trump's post, the Attorney General purported to appoint

Ms. Halligan as interim U.S. Attorney pursuant to 28 U.S.C. § 546.  Though Subsection 546(c)(2)

---

[6] Thrush et al., *U.S. Attorney Investigating Two Trump Does Departs Amid Pressure from President*, N.Y. Times (Sept. 19, 2025).
[7] *Id.*
[8] From its salutation and context, it appears the social media post was intended to be a private message to Attorney General Bondi.  It has been reported that the President "was surprised to learn that it was public."  Josh Dawsey et al., *Inside the Justice Department Where the President Calls the Shots*, Wall St. J. (Oct. 8, 2025), https://www.wsj.com/politics/policy/trump-doj-inside-political-enemies-17f13f72?.
[9] Betsey Klein, *Trump calls on Attorney General Bondi to use power of the Justice Department more aggressively*, CNN (Sept. 20, 2025), https://www.cnn.com/2025/09/20/politics/trump-justice-department-pam-bondi.
[10] Jeremy Roebuck, *Trump's new demands on Justice Department raise alarm among prosecutors*, Wash. Post (Sept. 22, 2025), https://www.washingtonpost.com/national-security/2025/09/22/trump-justice-department-prosecutions/.

3

provides that an interim U.S. Attorney may serve only until "the expiration of 120 days after appointment by the Attorney General under this section," the purported appointment of Ms. Halligan occurred *244 days* after the Attorney General's invocation of Section 546 to appoint Mr. Siebert.  Since her purported appointment, Ms. Halligan has been "the one handling" this case, including as the sole signatory on the indictment.[11]

### B.    Legal Background

The Appointments Clause provides the exclusive process by which the President may appoint "Officers of the United States."   U.S. Const. Art. II, § 2, cl. 2.   "[F]or purposes of appointment," the Clause divides officers into two classes:   principal officers and "inferior officers."   *United States v. Germaine*, 99 U.S. 508, 509 (1879).   Principal officers must be appointed by the President by and with the advice and consent of the Senate.  *See Edmond v. United States*, 520 U.S. 651, 660 (1997).  That process "is also the default manner of appointment for inferior officers," subject to a limited exception:   Congress may "by Law" authorize the President, the head of an executive department, or a court of law to appoint inferior officers without the advice and consent of the Senate.  *Id.*  U.S. Attorneys are inferior officers.  *See Myers v. United States*, 272 U.S. 52, 159 (1926).  Accordingly, U.S. Attorneys must be appointed either 1) by the President with the advice and consent of the Senate, or 2) through a process that Congress has properly authorized "by Law."   An appointment that conforms with neither pathway violates the Appointments Clause.  *See Lucia*, 585 U.S. at 251.

Since the first Congress, U.S. Attorneys have been appointed through the "default manner of appointment,"—by the President with the advice and consent of the Senate.  *Edmond*, 520 U.S. at 660; *see also* Judiciary Act of 1789, 1 Stat. 73 § 35; James A. Heilpern, *Interim United States*

---

[11] *See* Anna Bower, *"Anna, Lindsey Halligan Here*.", *Lawfare* (October 20, 2025) https://www.lawfaremedia.org/article/anna--lindsey-halligan-here.

*Attorneys*, 28 Geo. Mason L. Rev. 187, 190 (2020).  This requirement is codified at 28 U.S.C. § 541(a).  To minimize the disruption posed by a prolonged vacancy at a U.S. Attorney's office, however, Congress has provided the Executive Branch with a pathway to temporarily install a U.S. Attorney without Senate confirmation.  Under 28 U.S.C. § 546, "the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant," and that person may serve until either "(1) the qualification of a United States attorney for such district appointed by the President" and confirmed by the Senate, "or (2) the expiration of 120 days after appointment by the Attorney General under this section."  28 U.S.C. § 546(c).  When an interim U.S. Attorney appointment expires after 120 days, "the district court for such district may appoint a United States attorney to serve until the vacancy is filled."  *Id.* § 546(d).

The durational limit on the Attorney General's appointment authority under 28 U.S.C. § 546(c)(2) guarantees the role of 28 U.S.C. § 541 (and therefore, Senate confirmation) as the exclusive means of appointing a U.S. Attorney.  In 2006, Congress removed the 120-day expiration date on interim U.S. Attorney appointments as part of the PATRIOT Act.  *See* Pub. L. No. 109–77, Title V, § 502, 120 Stat. 192, 246 (2006).  A little more than a year later, however, Congress amended the statute to reinstate the 120-day limitation.  *See* Pub. L. No. 110-34, § 2, 121 Stat. 224 (2007).  The catalyst for the reversion was Congress's concern about "several instances where the Attorney General made successive interim appointments pursuant to section 546 of either the same or different individuals."  H.R. Rep. No. 110–58 at 6 (2007).  Section 546 has not changed since the 2007 amendment.

## ARGUMENT

I.    **MS. HALLIGAN'S PURPORTED APPOINTMENT AS INTERIM UNITED STATES ATTORNEY IS UNLAWFUL**

### A.    Ms. Halligan's Appointment is Invalid and Unlawful Under Section 546.

The Attorney General's authority to name an interim U.S. Attorney expires 120 days after she makes an appointment.  Section 546 affords the Attorney General a single 120-day period between the departure of one Senate-confirmed U.S. Attorney and the appointment of another. Multiple interim U.S. Attorneys may serve during that period, but they cannot serve for a cumulative total of more than 120 days.  Once an interim U.S. Attorney appointment expires after 120 days, Subsection 546(d) provides that the exclusive authority to appoint an interim U.S. Attorney belongs to the district court.

Because the Attorney General invoked Section 546 on January 21, 2025, to name Mr. Siebert as interim U.S. Attorney for the Eastern District of Virginia, her authority under Section 546 expired on May 21, 2025.  Consequently, the Attorney General's attempt to appoint Ms. Halligan as interim U.S. Attorney for the Eastern District of Virginia on September 22, 2025, violated Subsection 546(c)(1).  The Government has resisted this straightforward application of Section 546.  It seemingly believes that the Attorney General has the power to appoint an unlimited number of interim U.S. Attorneys to an unlimited number of 120-day terms.  Because the text, structure, and context provide no support for the Government's novel interpretation of Section 546, this Court should reject the Executive Branch's attempt to install Ms. Halligan as interim U.S. Attorney.

### 1.    The Government's Position is Contrary to Section 546's Text

The text of Section 546 is unambiguous:  the Attorney General is vested with 120 total days to appoint an interim U.S. Attorney, and that 120-day clock starts running from the date the

Attorney General first invokes Subsection 546(a).  Under the clear framework established by Section 546, the Attorney General "may appoint" an interim U.S. Attorney; Attorney General appointees may serve for "120 days" following the Attorney General's invocation of her appointment authority; and after that period "expires," the "district court for such district may appoint a United States attorney to serve until the vacancy is filled."  28 U.S.C. §§ 546(a), (c)(2), (d).  Ms. Halligan's purported appointment did not comport with this framework.

Analyzing Section 546's text reveals several flaws with the Government's theory that the 120-day limit on the Attorney General's appointment authority applies only on a per-appointee basis.  First, the Government's reading requires the insertion of terms that are absent from the statute.  Subsection 546(c) provides that "a person appointed" under the statute may serve until "the expiration of 120 days after appointment *by the Attorney General*" (emphasis added).  The time limitation is thus benchmarked to the Attorney General's actions, not an individual's appointment.  The Government reads the statute as stating that an interim U.S. Attorney may serve until "the expiration of 120 days after *his or her* appointment by the Attorney General."  Those words do not appear in the statute, however, and the Court cannot "add words to the statute to achieve what the [government] thinks a desirable result."  *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 348 (2024); *see also Dean v. United States*, 556 U.S. 568, 572 (2009) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face" (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997))).

Second, the text of Subsection 546(d) provides a single option for what can happen following the expiration of an appointment under Subsection 546(c)(2):  "if an appointment expires under Subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled."  28 U.S.C. § 546(d).  But under the Government's reading of the

statute, there is also a second, unwritten option: The Attorney General may appoint a new interim U.S. Attorney. Here again, the Government's interpretation brushes up against the fundamental principle of statutory interpretation that "absent provision[s] cannot be supplied by the courts." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 94 (2012). To do so "is not a construction of a statute, but, in effect, an enlargement of it by the court." *Iselin v. United States*, 270 U.S. 245, 251 (1926). If Congress had intended to provide an additional option for appointing an interim U.S. Attorney following the expiration of the Attorney General's 120-day appointment window, it would have said so through the text. But the sole option that Congress wrote into law affords authority to the judiciary "until the vacancy is filled" by appointment under Section 541; it makes no mention of a possible successive appointment by the Attorney General.

> **2.    The Government's Position is Contrary to the Context and Structure of Section 546.**

The Government's theory of Section 546 is also operationally unworkable. Under the Government's reading of the statute, the district court and the Attorney General have concurrent authority to appoint a U.S. Attorney following the expiration of an appointment under Subsection 546(c)(2). The Attorney General and district court thus might select *different* individuals to serve as interim U.S. Attorney. But Section 546 provides no guidance about whose selection would control in this scenario, precisely because the statute does not allow for it to occur in the first instance. The statute's silence is not an accidental omission or a blank canvas for the judiciary's pen. Moreover, an interpretation of Section 546 that would give the Attorney General and district court concurrent authority to name an interim U.S. Attorney would give rise to thorny separation-of-powers questions. "When legislation and the Constitution brush up against each other," however, "[a court's] task is to seek harmony, not to manufacture conflict." *United States v. Hansen*, 599 U.S. 762, 781 (2023). The Government's theory would force the judiciary to resolve

8

an unnecessary constitutional conflict.

The statutory history of Section 546 further supports the plain-text reading. Under the reenactment canon of statutory interpretation, "[i]f the legislature amends or reenacts a provision other than by way of a consolidating statute or restyling project, a significant change in language is presumed to entail a change in meaning." Scalia & Garner, Reading Law, § 40 at 256. Such a change happened here. Through the passage of the PATRIOT Act in 2006, Congress "entirely removed the 120-day limit and the district court's backstopping role," and simply provided that "'a person appointed as United States attorney under this section may serve until the qualification of a United States Attorney for such district appointed by the President under section 541 of this title.'" *United States v. Giraud*, 2025 WL 2416737, at *11 (D.N.J. Aug. 21, 2025) (quoting Pub. L. No. 109-77, Title V, § 502, 120 Stat. 192, 246 (2006)). Yet this switch was "short lived." *Giraud*, 2025 WL 2416737, at *11. Recognizing that the amendment "created a possible loophole that could permit United States Attorneys appointed on an interim basis to serve indefinitely without Senate confirmation,"[12] Congress in June 2007 enacted a law restoring the pre-2006 regime. H.R. Rep. No. 110-58, at 4 (2007), *see* Pub. L. No. 110-34, § 2, 121 Stat. 224 (2007).

The Government's interpretation of Section 546 would give no effect to the 2007 amendment. Instead, the Government's reading would mean that the amendment failed to close the very loophole that motivated its passage. That cannot be the correct reading of the statute. "Courts should remember that '[l]egislation has an aim; it seeks to obviate some mischief.'" Felix

---

[12] The House Report expressed serious concerns about the Executive Branch "[b]ypassing the Requirement of Senatorial Advice and Consent," emphasizing "several instances where the Attorney General made successive interim appointments pursuant to section 546 of either the same or different individuals." *Giraud*, 2025 WL 2416737, at *11 (quoting H.R. Rep. No. 110-58 at 6 (2007).

Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 538–39 (1947); *see also*, Samuel L. Bray, *The Mischief Rule*, 109 Geo. L.J. 967, 968 (2021) ("The mischief rule instructs an interpreter to consider the problem to which the statute was addressed, and also the way in which the statute is a remedy for that problem. . . . [T]he generating problem is taken as part of the context for reading the statute."). As Justice Story explained nearly two centuries ago, "[E]very statute is to be expounded reasonably, so as to suppress, and not to extend, the mischiefs, which it was designed to cure." *Sherwood v. Sutton*, 21 F. Cas. 1303, 1307 (C.C.D.N.H. 1828).

Reading Section 546 to enable the Attorney General to string together an infinite number of "interim" U.S. Attorney appointments without any time limitations would fully extinguish the Senate's advice-and-consent role in the appointment of U.S. Attorneys. There would be little incentive for the Executive Branch to ever turn to 28 U.S.C. § 541(a) to undertake the arduous process of Senate confirmation to appoint a "permanent" U.S. Attorney. The Government's reading would thus allow the Executive Branch to sideline the Senate from performing the role it has played continuously since the first Congress. *See* Judiciary Act of 1789, 1 Stat. 73 § 35; Heilpern, *Interim United States Attorneys*, 28 Geo. Mason L. Rev. at 190. This Court cannot accept an interpretation of Section 546 that would render obsolete Section 541 and, resultingly, the Senate's constitutional role in the appointments process. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 35 (2003) ("A statutory interpretation that renders another statute superfluous is of course to be avoided." (citing *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837 & n. 11 (1988))).

The Government's novel interpretation of Section 546 is also contrary to the Executive Branch's historical understanding of the statute. Just three days after Congress enacted the 1986 law, the Office of Legal Counsel (OLC) within the DOJ issued an opinion, authored by then-

Deputy Assistant Attorney General Samuel Alito, interpreting the provision in a manner that contradicts the interpretation that the Government maintains.[13]   OLC concluded that while a "vacancy exists when the 120-day period expires under the amended section 546 and the President has either not made an appointment or the appointment has not been confirmed," "it *does not follow* that the Attorney General may make another appointment pursuant to 28 U.S.C. § 546(a) after the expiration of the 120-day period." *Id.* at 2 (emphasis added).  Then-Deputy Assistant Attorney General Alito reasoned that "[t]he statutory plan discloses a Congressional purpose that after the expiration of the 120-day period further interim appointments are to be made by the court rather than by the Attorney General." *Id.* at 3.  This "contemporaneous[]" Executive Branch interpretation provides persuasive evidence of statutory meaning.  *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 386 (2024).

The only district court to confront the Government's theory of Section 546 resoundingly rejected it.  *See Giraud*, 2025 WL 2416737, at *10–12.  As that court recognized, the Government's interpretation of Section 546 is unmoored from the statute's text, structure, and historical context.  There is no canon of statutory construction that supports the Executive Branch's attempt to circumvent the Senate's proper role in the appointments process under Section 541(a).

**B.    As Ms. Halligan's Appointment Occurred Without Statutory Authorization, it Violates the Appointments Clause.**

The Executive Branch violated the Appointments Clause by purporting to appoint Ms. Halligan as interim U.S. Attorney without the advice and consent of the Senate and without any alternative statutory authority to do so.  The Appointments Clause establishes that the President shall not appoint "Officers of the United States," *i.e.*, principal officers, without "the advice and

---

[13] *See Definition of Vacancy for the Purpose of Interim Appointment of United States Attorneys pursuant to 28 U.S.C. 546, as amended*, Office of Legal Counsel (Nov. 13, 1986), https://perma.cc/SD5Q-7CPH.

consent of the Senate." U.S. Const., Art. II, § 2, cl. 2. Though Congress may pass legislation to vest the power to appoint inferior officers in "the President alone, in the Courts of Law, or in the Heads of Departments" the advice-and-consent process is "the default manner of appointment for inferior officers," in the absence of such legislation. *See Edmond*, 520 U.S. at 660. Here, Ms. Halligan was not appointed either 1) by the President with the advice and consent of the Senate, or 2) through a process that Congress had authorized "by Law." Her appointment thus violated the Appointments Clause. U.S. Const., Art. II, § 2, cl. 2.

Congress "by Law" vested the appointment of interim U.S. Attorneys in a "Head of Department[]"—the Attorney General—as well as in "the Courts of Law"—district courts. But the Attorney General's authority to appoint an interim U.S. Attorney had expired by the time she purported to appoint Ms. Halligan, and Ms. Halligan was not appointed by the district court. Accordingly, her appointment was not authorized "by Law." Because the Attorney General's purported appointment of Ms. Halligan occurred in violation of Section 546 and without the advice and consent of the Senate, it also violates the Appointments Clause. *See Trump v. United States*, 603 U.S. 593, 644–45 (2024) (Thomas, J., concurring); *United States v. Trump*, 740 F. Supp. 3d 1245, 1263 (S.D. Fla. 2024).

## II. MS. HALLIGAN'S UNLAWFUL APPOINTMENT WARRANTS DISMISSAL OF THE INDICTMENT AND AN INJUNCTION BARRING MS. HALLIGAN FROM CONTINUING TO PERFORM THE FUNCTIONS AND DUTIES OF INTERIM U.S. ATTORNEY

### A. This Court Should Dismiss the Indictment.

Dismissal of the indictment is warranted for three reasons. First, this Court lacks jurisdiction because no "proper representative of the Government" had a role in securing the indictment. *See Providence Journal*, 485 U.S. at 707–08. Second, even if this Court possesses jurisdiction, Supreme Court precedent establishes that an officer's actions are null and void if she

was appointed in violation of the Appointments Clause. *Lucia*, 585 U.S. at 251. And third, because this indictment would not have been sought or obtained absent Ms. Halligan's unlawful appointment under the guise of 28 U.S.C. § 546, the indictment's flaws do not constitute harmless error.

The jurisdictional defect in this prosecution warrants its dismissal. A court does not have jurisdiction over a criminal case unless "a proper representative of the Government" participates in the action. *See Providence Journal*, 485 U.S. at 699 (dismissing previously granted writ of certiorari for lack of jurisdiction in a criminal case where special prosecutor lacked authority to represent United States); *United States v. Bennett*, 464 Fed. Appx. 183, 184–85 (4th Cir. 2012) ("A federal court is without jurisdiction in a criminal prosecution where the Government lacks an authorized representative." (citing *Providence Journal Co.*, 485 U.S. at 708)). "Except as otherwise authorized by law, the conduct of litigation in which the United States . . . is a party . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516. An indictment "must be signed by an attorney for the government." Fed. R. Crim. P. R. 7(c)(1). Federal Rule of Criminal Procedure 1(b)(1) defines "[a]ttorney for the government" as "(A) the Attorney General or an authorized assistant; (B) a United States attorney or an authorized assistant; . . . [and] any other attorney authorized by law to conduct proceedings under these rules as a prosecutor." Fed. R. Crim. P. 1(b)(1). Because Ms. Halligan's appointment was invalid under Section 546, she does not qualify under any of these provisions. Accordingly, she is not a "proper representative of the Government." *Providence Journal*, 485 U.S. at 707–08.

It is true that an individual's unauthorized participation in a criminal prosecution does not deprive a court of jurisdiction where "he was not the only government attorney assigned to the case and that he was at all times acting under the direction and supervision of an Assistant U.S.

13

Attorney." *United States v. Plesinski*, 912 F.2d 1033, 1038 (9th Cir. 1990); *see also*, *United States v. Underwood*, 129 F.4th 912, 943–44 (6th Cir. 2025), *cert. denied*, No. 25-5329, 2025 WL 2824485 (U.S. Oct. 6, 2025) (finding that the court possessed jurisdiction because "at all pertinent times, a second, licensed AUSA was present as a representative of the Government"); *Kelley v. United States*, 989 F.3d 67, 71 (1st Cir. 2021) (concluding that the court had jurisdiction because "the supervisors in the United States Attorney's Office had . . . examined and approved the indictment.")).

But where an unauthorized individual is not accompanied by a proper representative of the Government "at all relevant times," however, a court lacks jurisdiction and must dismiss the indictment. *Underwood*, 129 F.4th at 943. Thus, to "determine whether the . . . court ha[s] jurisdiction," it is necessary to determine whether Ms. Halligan was "the only prosecutor in attendance presenting the case against [Ms. James] to the grand jury." *United States v. Durham*, 941 F.2d 886, 892 (9th Cir. 1991). Unless the Government provides evidence that Ms. Halligan was not acting alone in presenting this case to the grand jury, this Court must dismiss for lack of jurisdiction.[14]

Because there is no evidence that any other government attorney played a role in securing the indictment,[15] the Court must dismiss this case for lack of jurisdiction if it determines that Ms.

---

[14] Courts have suggested that jurisdiction may exist where the unauthorized attorney was acting under the approval of authorized supervisors who examined and endorsed the indictment. *See Kelley*, 989 F.3d at 71; *Plesinski*, 912 F.2d at 1038. That does not save Ms. Halligan. Public reports indicate that Ms. Halligan did not coordinate with the DOJ before bringing the indictment of Attorney General James. *See* Kristin Holmes, et al., *Lindsey Halligan didn't coordinate NY AG Letitia James indictment with Pam Bondi's DOJ*, CNN (Updated Oct 10, 2025), https://www.cnn.com/2025/10/10/politics/lindsey-halligan-no-coordinate-letitia-james-indictment-doj.

[15] *See* Bower, *"Anna, Lindsey Halligan Here."*, *Lawfare* (October 20, 2025) (publishing a message in which Ms. Halligan stated that she was "the one handling" this case.).

Halligan was not a proper representative of the United States. *See United States v. Garcia-Andrade*, 2013 WL 4027859, at *5 (S.D. Cal. Aug. 6, 2013).

Even if this Court possesses jurisdiction, the indictment must be dismissed because an officer's actions are null and void if she was appointed in violation of the Appointments Clause. When a court determines that a government actor exercised "power that the actor did not lawfully possess," including because she was not "properly *appointed*," the effect of the ruling is to render her past actions "void." *Collins v. Yellen*, 594 U.S. 220, 257–58 (2021) (emphasis added). An improperly appointed officer cannot "lawfully exercise the statutory power of his office at all in light of the rule that an officer must be properly appointed before he can legally act as an officer." *Id.* at 266 (Thomas, J., concurring). In *Ryder v. United States*, 515 U.S. 177 (1995), for example, the Supreme Court "reversed" the court-martial conviction of a defendant after he successfully challenged the appointment of the intermediate appellate judges who reviewed his case. *Id.* at 188. Likewise, in *Lucia*, the Court set aside an agency adjudication "tainted with an appointments violation." 585 U.S. at 251. The *Lucia* Court made clear that a decision of an improperly appointed official cannot stand. *Id.* The same remedy is appropriate here.

Because Ms. Halligan's unlawful appointment fundamentally tainted the structural integrity of the grand jury process, this is a case where the harmless-error inquiry does not apply. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 257 (1988). It is not necessary for a court to consider the prejudicial impact of an error where, as here, "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Id*.

But if this Court did evaluate the prejudicial impact of Ms. Halligan's improper involvement in this prosecution, it would conclude that the Government cannot sustain its "burden

of showing harmlessness" under Federal Rule of Criminal Procedure 52(a).  *United States v. Davila*, 569 U.S. 597, 607 (2013).  "Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  *Chapman v. California*, 386 U.S. 18, 24 (1966).  Here, the context of the indictment makes clear that *but for* Ms. Halligan's improper appointment as interim U.S. Attorney, Attorney General James' indictment would not have even been presented to a grand jury.  President Trump publicly asked the Attorney General to appoint Ms. Halligan (which she ultimately did unlawfully) because he seemingly believed that under Mr. Siebert, "nothing is going to be done" about "Letitia"—*i.e.*, Attorney General James—and others who had targeted him and were, in the President's view, "guilty as hell."[16]  News reports and the President's own public statements indicate that the grand jury proceeding would not have occurred absent Ms. Halligan's unlawful appointment.  The only proper remedy is dismissal.

   **B.    This Court Should Enjoin Ms. Halligan From Prosecuting Cases, Supervising Prosecutions, and Performing Any of the Other Functions or Duties of Interim U.S. Attorney**

   Regardless of whether this Court dismisses the indictment, Attorney General James respectfully requests that it issue an injunction barring Ms. Halligan from acting as interim U.S. Attorney.  Specifically, this Court should enjoin Ms. Halligan from participating in or supervising the prosecution of this case, and from exercising any other functions or duties of an interim U.S. Attorney.  Because Ms. Halligan has no authority to serve as interim U.S. Attorney under Section 546 and is not legitimately exercising the functions and duties of that office—or any other office that would allow her to litigate on behalf of the United States—her participation in Attorney

---

[16] Betsey Klein, *Trump calls on Attorney General Bondi to use power of the Justice Department more aggressively*, CNN (Sept. 20, 2025), https://www.cnn.com/2025/09/20/politics/trump-justice-department-pam-bondi.

General James' case and in grand jury proceedings causes irreparable harm. For these reasons, Ms. Halligan must be enjoined from participating in grand jury proceedings and the ongoing prosecution of this case.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the indictment and enjoin Ms. Halligan from participating in the prosecution of this case.

Dated: October 24, 2025

Respectfully submitted,

*/s/ Abbe David Lowell*
Abbe David Lowell (*admitted pro hac vice*)
David A. Kolansky (*admitted pro hac vice*)
Isabella M. Oishi (*admitted pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Tel: 202-964-6110
Fax: 202-964-6116
ALowellpublicoutreach@lowellandassociates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com

*Attorneys for Letitia A. James*

*/s/ Andrew Bosse*
Andrew Bosse (VSB No. 98616)
BAUGHMAN KROUP BOSSE PLLC
500 E. Main Street, Suite 1400
Norfolk, VA 23510
Tel: (757) 916-5771
ABosse@bkbfirm.com