IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LETITIA A. JAMES<br><br>Defendant. | No. 2:25-CR-00122-JKW-DEM |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO
ENFORCE RULES PROHIBITING THE GOVERNMENT'S
<u>EXTRAJUDICIAL DISCLOSURES AND STATEMENTS</u>**

The United States of America, by and through its attorneys, Lindsey Halligan, United States Attorney for the Eastern District of Virginia, and Roger A. Keller, Jr., Assistant United States Attorney for said District, hereby files its Response to Defendant's Motion to Enforce Rules Prohibiting the Government's Extrajudicial Disclosures and Statements by Letitia James. The United States of America (the Government) asks the Court to deny Defendant's request to impose unilateral requirements on the Government to preserve all Government/media communications, and "create and maintain" a contact log.

## I.   <u>Procedural History</u>

A grand jury returned a two-count indictment against Defendant on October 9, 2025. Doc. 1. Defendant's Initial Appearance and Arraignment occurred on October 24, 2025. Doc. 24. Defendant filed the instant motion on October 23, 2025. Doc. 21.

## II.   <u>Introduction</u>

Defendant asks the Court to remind the Government that it must comply with relevant law involving media contacts. Such a reminder is important for all parties before the Court, not just

the Government. Furthermore, Defendant's request to impose unilateral requirements that the Government preserve Government/media communications and "create and maintain" a contact log is not required and overly broad. If the Court imposes such requirements on the Government, it should impose them on all litigants. A criminal defendant's "right to a *fair* trial does not give him the right to insist upon the opposite of that right – that is, a trial prejudiced in his favor." *United States v. Trump*, 88 F.4th 990, 1003 (D.C. Cir. 2023) (citations and quotations omitted). Finally, United States Attorney Lindsey Halligan's (Halligan) disclosure to protect her client from substantial undue prejudice is permitted under the ABA Rules of Professional Conduct.

### III. Argument

The Court observed that Defendant does not seek affirmative relief in her motion. She only seeks an order instructing the Government to comply with the relevant law regarding litigant/media interaction. Doc. 21 at 17. Instructing the parties in a public corruption criminal matter to comply with the relevant litigant/media interaction law – including the relevant Rules of Professional Conduct – rather than imposing a harsher requirement is reasonable. *United States v. McGregor*, 838 F. Supp. 2d 1256, 1267 (M.D. Ala. 2012) ("[b]ecause of their legal training, attorneys are knowledgeable regarding which extrajudicial communications are likely to be prejudicial" and are presumed to follow the relevant Rules of Professional Conduct).

However, Defendant attempts to impose unilateral obligations on the Government. She seeks on order directing the Government to: (1) "preserve *all* communications with *any* media person, journalist, or outlet, and take all reasonable steps to prevent the deletion or destruction of *any* records or communications having to do with the investigation and prosecution of the case;" and (2) require "government counsel to create and maintain a log of all contact between *any* government attorney or agent on this case and *any* member of the news media or press concerning

this case." Doc. 21 at 17-18 (emphasis added). Essentially, Defendant attempts to chill all Government/media interaction with the unstated threat that she – at some future point in time – may engage in a "gotcha" game where she brings a sanctions motion because the Government inadvertently failed to maintain a document or include a contact in its log.

There is no Court-imposed requirement that the Government preserves the records or maintains the logs – and Defendant offers no compelling reason for imposing such requirements on the Government. Moreover, Defendant's proposed requirement is overly broad and vague. For example, Local Rules lists specific topics "a lawyer, law firm, or law enforcement personnel associated with the prosecution *or defense* shall not release or authorize the release of any extrajudicial statement which a reasonable person would expect to be further disseminated by any means of public communications." E.D. Va. Admin. R. 57.1(C) (emphasis added). Defendant's proposal is not limited to these specific topics. Instead, she wants the Government to maintain a log of *all* Government/media contacts and to preserve *all* documents – neither requirement contemplated by the Local Rules – regardless of whether they fall within the prohibited topics.

Furthermore, if the Court entertains Defendant's proposal, it should extend the requirements to all litigants. Defendant's status as a defendant does not grant her an unfettered First Amendment right to proclaim her innocence or that she is a victim of a "weaponized" government. This Court's duty to "prevent the prejudice to the trial process at its inception," *Trump*, 88 F.4th at 1004, and Defendant's special status as a lawyer and officer of the Court – which subjects her "to fiduciary obligations to the court and the parties," *id.* at 1005 – limit her First Amendment rights. "[T]he law has long recognized the district court's authority to control the speech and conduct *even of defendants in criminal trials* when necessary to protect the criminal justice process." *Id.* at 1006 (emphasis added).

3

"[T]he Constitution affords judges broader authority to regulate the speech of trial *participants*." *Id.* (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n. 19 (1984)) (emphasis added). The Court's ability to regulate the participants' speech is "aimed at two principal evils: (1) comments that are likely to influence the actual outcome of the trial; and (2) comments that are likely to prejudice the jury venire, even if an untainted panel can ultimately be found." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991). This means that "[n]either prosecutors, counsel for defense, [nor] *the accused*, . . . should be permitted to frustrate the court's function." *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966) (emphasis added). Defendant's right to a *fair* trial does not give [her] the right to insist upon the opposite of that right – that is a trial prejudiced in [her] favor." *Trump*, 88 F.4th at 1003 (citations and quotations omitted). Defendant's cases are not to the contrary. *See*, *e.g.*, *Gentile*, 501 U.S. at 1072 ("[w]e expressly contemplated that speech of *those participating before the courts* could be limited").

Moreover, Defendant's status as a lawyer and an officer of the Court also limits her First Amendment rights. For example, the New York Rules of Professional Conduct prohibit "a lawyer from making statements that the lawyer knows or reasonably should know will have a substantial likelihood of materially prejudicing an adjudicative proceeding. … [T]he Rule applies only to lawyers who are participating or have participated in the investigation or litigation of a matter and their associates." New York Rules of Professional Conduct, 2025, Rule 3.6 (Comment [3]). Similarly, this Court's Rules provide that "a lawyer . . . shall not release or authorize the release of any extrajudicial statement [involving certain topics] which a reasonable person would expect to be further disseminated by any means of public communication. . . ." E.D. Va. Admin. R. 57.1(C).

Following her arraignment, Defendant claimed that "[t]his is nothing more than a continuation of the [P]resident's desperate weaponization of our justice system." [New York AG Letitia James speaks out on federal indictment: 'I will not bow' - ABC News](). Similarly, she claimed that "[t]hese charges are baseless, and the [P]resident's own public statements make clear that his only goal is political retribution at any cost. The [P]resident's actions are a grave violation of our Constitutional order and have drawn sharp criticism from members of both parties." [AG Letitia James, lawmakers respond to Virginia indictment](). Similar statements have subjected an attorney to sanctions in this Court. *In Re Morrissey*, 168 F.3d 134, 137 (4th Cir. 1999) (the attorney "characterized the charges against [his client] as vicious and vindictive and questioned whether they ever should have been filed"). Furthermore, these statements go beyond "announcing without further comment that the accused denies the charges made against such person." E.D. Va. Admin. R. 57.1(C). Instead, Defendant attempts, through these statements, to influence the trial's outcome and prejudice the jury venire – the two evils this Court is duty bound to prevent.

By contrast, Halligan's text exchange does not rise to the same level as Defendant's statements. Defendant errantly suggests that Halligan initiated contact with a reporter to "comment[ ] on the credibility and general strength of the evidence presented to the grand jury" and "on the purported strength of the case she was bringing, complain[ing] about the *New York Times*' coverage of a certain witness's grand jury testimony. . . ." Doc. 21 at 5. However, the text exchange demonstrates that Halligan contacted the reporter "to protect [her] client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client" – a permissible reason for contacting the reporter. ABA Model Rules of Professional Conduct R. 3.6(c); *see also* Rule 3.6 [Comment] ("extrajudicial statements that might otherwise raise a question under this Rule may be permissible when they are made in response to statements

5

made publicly by . . . third persons, where a reasonable lawyer would believe a public response is required in order to avoid prejudice to the lawyer's client");[1] Exhibit 21-2 at 2 (Anna, Lindsey Halligan here. You are reporting things that are simply not true. Thought you should have a heads up"); *id.* at 4 ("[s]eems clear to me that you just jump to your biased conclusions based off of what you read instead of truly looking into the evidence"); *id.* at 9 ("Anna, You're biased. Your reporting isn't accurate"); *id.* at 12 ("[n]o it was for you to correct it, which you refused to do. You don't report fairly"). Defendant's argument – that Halligan "initiated contact with a journalist to affect the *reporting* on the case she had just brought" – concedes that Halligan contacted the reporter in an attempt to protect her client from unfair prejudice, *i.e.*, to address the potential unfair prejudice from the *reporting*, not the underlying case.[2] Doc. 21 at 13 (emphasis added).

Halligan's disclosure of information was permissible to protect her client from substantial undue prejudice. Defendant claims that Halligan's comments violated Rule 6(e). It "prohibits disclosure of a 'matter occurring before the grand jury' by, *inter alia*, government attorneys or government personnel assisting in enforcing federal criminal law." *United States v. Rosen*, 471 F. Supp. 2d 651, 654 (E.D. Va. 2007). A violation occurs if the disclosure "(i) involve[s] a matter occurring before the grand jury, and (ii) involve(s) a person subject to Rule 6(e)'s secrecy requirements." *Id.* (citations and quotations omitted). Disclosure of a "matter occurring before the grand jury" is serious. *United States v.* Walters, 910 F.3d 11 (2d Cir. 2018) (Jacobs, J.,

---

[1] The Code of Federal Regulations also permits a release of information "only on the infrequent occasion when circumstances absolutely demand a disclosure of information and shall include only information which is clearly not prejudicial." 28 C.F.R. § 50.2(b)(5).

[2] Defendant also asserts that Halligan's text exchange violated Model Rule 3.8, *Special Responsibilities of a Prosecutor*. Doc. 21 at 10. This argument ignores Rule 3.8's exception that allows a prosecutor to make extrajudicial statements permitted by Rule 3.6, such as those necessary to protect her client from substantial unfair prejudice. Rule 3.8(f).

concurring); *In re Blue Grand Jury*, 536 F. Supp. 3d 435 (D. Minn. 2021); *United States v. Smith*, 992 F. Supp. 743 (D.N.J. 1998).

However, such "[s]ecrecy is not absolute . . . ." *In Re Grand Jury Matter*, 682 F.2d 61, 63 (3d Cir. 1982). Rule 6(e) "protects from disclosure only the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process." *In Re Grand Jury Subpoena*, 920 F.2d 235, 241 (4th Cir. 1990). This means that disclosure of grand jury material only violates Rule 6(e) if it "reveal[s] some secret aspect of the grand jury." *Rosen*, 471 F. Supp. 2d at 654. Examples of impermissible Rule 6(e) disclosure include "details about the grand jury's likely course of conduct in the near future, although no Rule 6(e) violation in this regard occurs unless the disclosure contains details about the grand jury's inner workings or proceedings." *Id.* at 655 (citations omitted). Other impermissible disclosures include revealing "the identity of grand jurors or expected witnesses, . . . witness' expected testimony or questions they would be asked, . . . transcripts or the substance of testimony, . . . the strategy or direction of a grand jury investigation, or report when the grand jury will return an indictment." *Id.* (citations omitted). However, a prosecutor may provide information previously presented to a grand jury that is in the public record without violating Rule 6(e). *United States v. Pasciuti*, 803 F. Supp. 563, 568 (D. N.H. 1992) (citation omitted); *see also* E.D. Va. Admin R. 57.1(C) ("the lawyer or law firm may quote from or refer without comment to public records of the Court in the case").[3]

Here, Halligan's disclosures did not reveal anything that transpired before the grand jury. She expressly excluded grand jury matters from her comments to the reporter. *See*, *e.g.*, Doc. 21-2 at 7 ("I can't tell you grand jury stuff"); *id.* at 11 ("I can't discuss any potential charges with

---

[3] The Justice Manual's prohibition against disclosures is not absolute. It permits the disclose of certain information "if such information is part of the public record in the case." U.S. Dep't of Just. Manual § 1-5.10

reporters. If evidence arises that warrants further charges, I'll look into it!"). Furthermore, she did not, as Defendant suggests, "comment[ ] on the credibility and general strength of the evidence presented to the grand jury." Doc. 21 at 13. Instead, as the Rule requires, Halligan only provided "such information as is necessary to mitigate the recent adverse publicity." Rule 3.6(c). For example, when challenged on what information the *New York Times* disclosed that was not a full representation of what happened, Halligan directed the reporter to the facts alleged in the Indictment. Doc. 21-2 at 7 ("You should read the indictment. It says she received thousand(s) of dollars in rent"). Defendant concedes this fact. Doc. 21 at 14 ("Ms. Halligan also referenced possible trial evidence (*cited in the indictment*) to drive home her point when she stated, 'It says she received thousand(s) of dollars in rent'") (emphasis added). A prosecutor "may state without elaboration the information contained in the public record" without running afoul of Rule 6(e). *Pasciuti*, 803 F. Supp. at 568.

      Finally, Defendant maintains that Halligan provided her subjective views on contested allegations and disputed factual issues, discussed the identity, testimony, or credibility of prospective witnesses, and provided her opinion as to the accused's guilt or innocence on the case's merits or evidence. Doc. 21 at 13-14. As the text exchange itself demonstrates, however, Halligan simply attempted to protect her client from unfair prejudice resulting from reporting half-truths. When challenged on what Halligan considered a half-truth, she directed the reporter – without comment on the evidence's strength – to the Indictment's allegations. She did not provide her subjective view of the evidence, comment on a witness's credibility, or claim that the evidence proved Defendant's guilt.

      When the reporter wrote: "I'm happy to retract or correct anything that is untrue. But I can't do that if I don't know what the supposed error is. Can you be more specific?" Halligan

8

responded: "You should read the indictment. It says that she received thousand(s) of dollars in rent." Doc. 21-2 at 7. When the reporter added: "Though the indictment says there were thousands of dollars of rent paid *at one point,* I don't see that as inconsistent with her testimony as reported by the NY Times. James's ethics disclosures report between $1,000-$5,000 in rent back in 2020. But after that, she didn't disclose additional rental income. I'm still not sure I understand what's incorrect about the NY Times account or my summary of it," Halligan replied: "Anna, You're biased. Your reporting isn't accurate. I'm the one handling the case and I'm telling you that. If you want to twist and torture the facts to fit your narrative, there's nothing I can do. Waste to even give you a heads up." Doc. 21-2 at 8-9. Halligan did not opine that the receipt of "thousand(s) of dollars in rent" convicted Defendant. She stopped the conversation.

## IV.     Conclusion

The Government agrees "that the atmosphere essential to the preservation of a fair trial – the most fundamental of all freedoms – must be maintained at all costs." *Estes v. State of Texas*, 381 U.S. 532, 540 (1965). Moreover, it also agrees that "[t]he theory of our system is that the conclusion to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Patterson v. Colorado*, 205 U.S. 454, 462 (1907). Finally, it concurs that "the measures a judge takes or fails to take to mitigate the effect of pretrial publicity . . . may well determine whether the defendant receives a trial consistent with the requirements of due process." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 555 (1976). In this case, however, the necessary measures are reminding the parties – including the Defendant-Attorney – of their obligations to follow the Rules of Professional

Conduct relating to pretrial publicity, not imposing unilateral obligations on the Government – especially when the Defendant engages in conduct this Court previously found sanctionable.[4]

                            Respectfully submitted,

                            Lindsey Halligan
                            United States Attorney

By:        /s/
                            Roger A. Keller, Jr.
                            Missouri Bar #42541
                            Assistant United States Attorney
                            United States Attorney's Office
                            101 West Main Street, Suite 8000
                            Norfolk, VA 23510
                            Phone: (757) 441-6331
                            Facsimile: (757) 441-6689
                            E-Mail: Roger.Keller@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of October 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

By:        /s/
                            Roger A. Keller, Jr.
                            Assistant United States Attorney

---

[4] The Justice Manual limits it prohibition against statements or disclosures to "any information that reasonably could have a *substantial likelihood* of materially prejudicing an adjudicative proceeding." U.S. Dep't of Just. Manual § 1-7.600 (emphasis added). As demonstrated above, Halligan's suggestion to the reporter that she "should read the indictment" does not involve a prohibited disclosure. Doc. 21-2 at 8.