IN THE UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF VIRGINIA

Norfolk Division

_____

UNITED STATES OF AMERICA,

      v.                             No. 2:25-CR-00122-JKW-DEM

LETITIA JAMES,
      Defendant.

<u>BRIEF OF LAWYERS DEFENDING AMERICAN DEMOCRACY,
AMICUS CURIAE,
IN SUPPORT OF JAMES' MOTION TO DISMISS FOR
VINDICTIVE PROSECUTION</u>

LAWYERS DEFENDING AMERICAN
DEMOCRACY,
Amicus Curiae, by:

Jonathan Shapiro*
Virginia Bar #13953
Washington and Lee University Law School
Room 441
Denny Circle
Lexington, Virginia 24550
(703) 217-7455
Shapiroj@wlu.edu
Lead Counsel for Amicus

John Reynolds
Third Year Law Student
Washington and Lee U. Law School
Application for Leave to Appear
      pending

*This brief is submitted in Mr. Shapiro's personal capacity and not as a representative of
Washington and Lee University Law School.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………..……..iii

CORPORATE DISCLOSURE STATEMENT………………………………………………1

IDENTITY AND INTEREST OF AMICUS……………………………………………....1

INTRODUCTION………………………………………………………………………....1

ARGUMENT……………………………………………………………………………....4

    I.    Proving Vindictive Prosecution………………………………………………....4

    II.   The Evidence in This Case Establishes That This is a Vindictive Prosecution…………....6

      A.   Direct Evidence of Vindictiveness…………………………………………...7

      B.   Circumstantial Evidence of Animus Motivating Prosecution…………………..…….....12

      C.   This Vindictive Prosecution Retaliates for Acts the Law Plainly Entitled Attorney General James to Take……………………………………………………………... 15

    III.   The Prosecution Raises Significant Concerns that Implicate Basic Principles of the Rule of Law…………………………………………………………………..…….17

CONCLUSION………………………………………………………………………..21

CETIFICATE OF SERVICE………………………………………………………..22

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Blackledge v. Perry*,
417 U.S. 21 (1974)……………………………………………………………….5, 6, 8, 15

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978)……………………………………………………………….15, 21

*North Carolina v. Pearce*,
395 U.S. 711 (1969)……………………………………………………………….15

*People v. Trump*,
237 N.Y. S.3d 443 (N.Y. App. Div. 2025)…………………………………………12, 17

*People v. Trump*,
No. 452564/2022, 2022 WL 16699216 (N.Y. Sup. Ct. Nov. 3, 2022)…………………………...17

*People v. Trump*,
No. 452564/2022, 2023 WL 6307177 (N.Y. Sup. Ct. Sep. 26, 2023)……………………………17

*United States v. Adams*,
870 F.2d 1140 (6th Cir. 1989)…………………………………………………………15

*United States v. Amerson*,
38 F.3d 1217 (1994), *cert. denied*, 514 U.S. 1056 (1995)……………………………………15

*United States v. Andrews*,
633 F.2d 449, 453 (6th Cir. 1980) (en banc), *cert denied*, 450 U.S. 927 (1982)……………...8, 16

*United States v. Armstrong*,
517 U.S. 456 (1996)……………………………………………………………………7

*United States v. Fiel*,
35 F.3d 997 (4th Cir. 1994), *cert. denied*, 513 U.S. 1177 (1995)………...………………………15

*United States v. Garcia*,
No. 3:25-cr-115, 2025 WL 2814712 (M.D. Tenn. Oct. 3, 2025)……………………………7

*United States v. Goodwin*,
457 U.S. 368 (1982)……………………………………………………………...5, 15

*United States v. Hooton*,
662 F.2d 628, 634 (9th Cir. 1981)……………………………………………...…….…5

*United States v. Ortiz-Santiago*,
211 F.3d 146 (1st Cir. 2000)……………………………………………………………9

*United States v. Santana*,
509 F. Supp. 2d 563 (E.D. Va. 2007), *aff'd in part*, 352 F. App'x 867 (4th Cir. 2009)…………..5

*United States v. Torquato*,
602 F.2d 564 (3d Cir. 1979), *cert. denied*, 444 U.S. 941 (1979)……………………………...21

*United States v. Trump*,
No. 23-cr-257, 2024 WL 3638344 (D.D.C. Aug. 3, 2024)……………………………….8, 9

*United States v. Velsicol Chem. Co.*,
498 F. Supp. 1255 (D.D.C. 1980)…………………………………………………………8

*United States v. Villa*,
70 F.4th 704 (4th Cir. 2023)……………………………………………………………...15

*United States v. Wilson*,
120 F. Supp. 2d 550, 552 (E.D.N.C. 2000)……………………………………………..5

*United States v. Wilson*,
262 F.3d 305 (4th Cir. 2001)…………………………………………………...5, 6, 7, 16

*Wayte v. United States*,
470 U.S. 598 (1985)……………………………………………………………………...21


**OTHER AUTHORITIES**

*'I am Your Retribution': Trump Lays Out His Grievances at CPAC*, Politico (Mar. 5, 2023),
https://www.politico.com/video/2023/03/05/i-am-your-retribution-trump-lays-out-his-grievances-at-cpac-851440 [https://perma.cc/K2TZ-H2U7] ....................................................... 2

*About DOJ*, U.S. Dep't of J., https://www.justice.gov/about [https://perma.cc/M73L-53GD] (last visited Oct. 20, 2025)............................................................................................................. 7

*Accelerating Authoritarian Dynamics: Assessment of Democratic Decline*, Steady State (Oct. 16, 2025), https://steadystate1.substack.com/p/accelerating-authoritarian-dynamics [https://perma.cc/YHD3-398X] .................................................................................................. 12

Alan Feuer, et al., *Prosecutor Who Rejected Trump's Pressure to Charge James Is Fired*, N.Y. Times (Oct. 17, 2025), https://www.nytimes.com/2025/10/17/us/politics/trump-prosecutor-fired-letitia-james.html [https://perma.cc/VW8L-2RLZ] ...................................................... 3, 4

Bruce A. Green & Rebecca Roiphe, *Can the President Control the Department of Justice?*, 70 Ala. L. Rev. 1 (2018) .............................................................................................. 18, 19

Charlie Rose, *Donald Trump*, at 41:53 (CharlieRose.com, Nov. 6, 1992), https://charlierose.com/guests/6048 [https://perma.cc/5D6H-4L22]........................................ 12

Donald J. Trump (@realDonaldTrump), Truth Soc. (Apr. 18, 2025 at 0:20 ET), https://truthsocial.com/@realDonaldTrump/posts/114357043475202498 [https://perma.cc/439S-TEXS].................................................................................................11

Donald J. Trump (@realDonaldTrump), Truth Soc. (Jan. 12, 2024 at 13:49 ET), https://truthsocial.com/@realDonaldTrump/posts/111744476136007497 [https://perma.cc/Y9X7-J6UQ] ........................................................................................ 10

Donald J. Trump (@realDonaldTrump), Truth Soc. (Mar. 21, 2023 at 12:38 ET), https://truthsocial.com/@realDonaldTrump/posts/110062253047408441 [https://perma.cc/3654-9XXR] ........................................................................................ 13

Donald J. Trump (@realDonaldTrump), Truth Soc. (Nov. 10, 2023 at 10:42 ET), https://truthsocial.com/@realDonaldTrump/posts/111387014628489419 [https://perma.cc/F2FQ-62AJ] ......................................................................................... 10

Donald J. Trump (@realDonaldTrump), Truth Soc. (Oct. 20, 2022 at 14:18 ET), https://truthsocial.com/@realDonaldTrump/posts/109105715495752629 [https://perma.cc/2MMV-3ZEM]..................................................................................... 10

Donald J. Trump (@realDonaldTrump), Truth Soc. (Sep. 20, 2025 at 18:44 ET), https://truthsocial.com/@realDonaldTrump/posts/115239044548033727 [https://perma.cc/G2NY-GZTR] ......................................................................................... 2

Donald J. Trump, Address at Campaign Rally in Sioux City, Iowa (Jan. 5, 2024)...................... 10

Fed. R. Evid 404(b)............................................................................................................ 12

Gerald R. Ford, *A Wise Man: U.S. Attorney General Edward H. Levi*, Wall St. J. (Dec. 28, 2006), https://www.wsj.com/public/resources/documents/levi122806.pdf [https://perma.cc/W43M-JP7P] ...................................................................................................................... 21

Griffin B. Bell, Attorney General of the United States, Address Before Department of Justice Lawyers (Sep. 6, 1978) ..................................................................................... 18, 19

Jacob Knutson, *Trump Says He Wants Removal of U.S. Attorney Overseeing Probe into Letitia James*, Democracy Dkt. (Sep. 19, 2025), https://www.democracydocket.com/news-alerts/trump-us-attorney-removed-new-york-attorney-general-letitia-james/ [https://perma.cc/WT2A-MR4R] ........................................................................................11

Jonah Bromwich & Devlin Barrett, *James Indictment Mirrors Her Civil Case Against Trump in Miniature*, N.Y. Times (Oct. 10, 2025), https://www.nytimes.com/2025/10/10/nyregion/trump-james-indictment-retribution.html [https://perma.cc/SA58-AV6D] ........................................ 14

Josh Dawsey et al., *Inside the Justice Department Where the President Calls the Shots*, Wall St. J. (Oct. 8, 2025), https://www.wsj.com/politics/policy/trump-doj-inside-political-enemies-17f13f72 [https://perma.cc/JX23-FC7T] ........................................................................... 2

Maggie Haberman & Shane Goldmacher, *Trump, Vowing 'Retribution,' Foretells a Second Term of Spite*, N.Y. Times (Mar. 7, 2023), https://www.nytimes.com/2023/03/07/us/politics/trump-2024-president.html [https://perma.cc/BU6J-39FJ] ................................................................. 13

Malcolm Ferguson, *Trump Makes Clear No One Can Rule Against Him as He Threatens Enemies*, New Republic (Oct. 15, 2025), https://newrepublic.com/post/201828/trump-chief-law-enforcement-officer-threatens-enemies [https://perma.cc/DH9U-JEP7] ........................... 13

Remarks by President Trump at Turning Point USA's Teen Student Action Summit 2019, White House (July 23, 2019), https://trumpwhitehouse.archives.gov/briefings-statements/remarks-president-trump-turning-point-usas-teen-student-action-summit-2019/ [https://perma.cc/Z9V2-6B7Q]............................................................................................................................... 2

*Restoring Justice: The Speeches of Attorney General Edward H. Levi* (Jack Fuller ed., 2013)... 21

Ryan J. Reilly, *DOJ 'Weaponization' Group Will Shame Individuals it Can't Charge with Crimes, New Head Says*, NBC News (May 13, 2025), https://www.nbcnews.com/politics/justice-department/doj-weaponization-group-will-shame-individuals-cant-charge-crimes-new-rcna206553 [https://perma.cc/M3YK-KGNJ] ......................................................................... 13

Ryan J. Reilly, *James Comey Case Jeopardizes Americans' Free Speech Rights, Retired Judges Warn*, NBC News (Sep. 30, 2025), https://www.nbcnews.com/politics/justice-department/james-comey-case-jeopardizes-free-speech-rights-retired-judges-rcna234774 [https://perma.cc/W73L-WHHG] ................................................................................................ 4

Steven Nelson, *Trump Calls NY AG Letitia Janes 'A Total Crook' — Says DOJ Will 'Do What's Right' on Criminal Fraud Referral*, N.Y. Post (May 6, 2025), https://nypost.com/2025/05/06/us-news/trump-calls-ny-ag-letitia-james-a-total-crook-says-doj-will-do-whats-right-on-fraud-criminal-referral/?utm_source=chatgpt.com [https://perma.cc/3TSZ-N4PV]....................................................................................................11

Trevor W. Morrison, *All the President's Men* (2025)..................................................................... 20

U.S. Dep't of Just., Just. Manual § 9-2020 ................................................................................... 7

U.S. Dep't of Just., Just. Manual § 9-27.001 ................................................................ 7

U.S. Dep't of Just., Just. Manual § 9-27.220 ........................................................... 7, 14

*United States v. Comey*, No. 1:25-cr-272 (E.D. Va. Sep. 25, 2025)................................................. 3

**CORPORATE DISCLOSURE STATEMENT**

Lawyers Defending American Democracy is a non-partisan tax-exempt 501(c)(3) corporation. Amicus is not owned by any parent corporation and no publicly held company has 10% or more ownership in LDAD.

**IDENTITY AND INTEREST OF AMICUS**

Lawyers Defending American Democracy (LDAD) is a non-profit, nonpartisan organization devoted to encouraging the legal profession to enforce and uphold principles of democracy and law, consistent with our obligations as lawyers; demanding accountability from lawyers and public officials; and identifying attacks on legal norms and prescribing redress for them. LDAD members include academics and lawyers immersed in the study of the Constitution with decades of experience in the courts.

LDAD's interest in the present case flows from the fact that it concerns an issue of great national importance arising with increasing regularity: the continued attempt of the Executive to disregard the rule of law by directing the United States Attorney and others in the Department of Justice to undertake criminal prosecutions of U.S. citizens based on political and personal animus in punishment for their lawful conduct in derogation of the rule of law.

**INTRODUCTION**

"I am your retribution."[1]

_____

[1] *'I am Your Retribution': Trump Lays Out His Grievances at CPAC*, Politico (Mar. 5, 2023), https://www.politico.com/video/2023/03/05/i-am-your-retribution-trump-lays-out-his-grievances-at-cpac-851440 [https://perma.cc/K2TZ-H2U7].

In an extraordinary series of events in early October that dwarf the "Saturday Night Massacre" of the Nixon Presidency, the President of the United States directed the United States Attorney General – in what he believed to be a private message[2] – to initiate the criminal prosecution of the defendant, Attorney General Letitia James:

> Pam: I have reviewed over 30 statements and posts saying that, essentially, "same old story as last time, all talk, no action. Nothing is being done. What about Comey, Adam "Shifty" Schiff, Leticia??? They're all guilty as hell, but nothing is going to be done." Then we almost put in a Democrat supported U.S. Attorney, in Virginia, with a really bad Republican past. A Woke RINO, who was never going to do his job. That's why two of the worst Dem Senators PUSHED him so hard. He even lied to the media and said he quit, and that we had no case. No, I fired him, and there is a GREAT CASE, and many lawyers, and legal pundits, say so. Lindsey Halligan is a really good lawyer, and likes you, a lot. We can't delay any longer, it's killing our reputation and credibility. They impeached me twice, and indicted me (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED, NOW!!! President DJT

Donald J. Trump (@realDonaldTrump), Truth Soc. (Sep. 20, 2025 at 18:44 ET), https://truthsocial.com/@realDonaldTrump/posts/115239044548033727 [https://perma.cc/G2NY-GZTR].

Ms. James, the elected Attorney General of the State of New York, had provoked the President's ire by bringing a civil action against his family members and his businesses, for fraud in a New York state court, resulting in a financial penalty of close to half a billion dollars. Trump's fury at Attorney General James for having the audacity to bring these cases, and his

---

In a similar vein, President Trump commented, "I have an Article Two where I have the right to do whatever I want as President." Remarks by President Trump at Turning Point USA's Teen Student Action Summit 2019, White House (July 23, 2019), https://trumpwhitehouse.archives.gov/briefings-statements/remarks-president-trump-turning-point-usas-teen-student-action-summit-2019/ [https://perma.cc/Z9V2-6B7Q].

[2] Josh Dawsey et al., *Inside the Justice Department Where the President Calls the Shots*, Wall St. J. (Oct. 8, 2025), https://www.wsj.com/politics/policy/trump-doj-inside-political-enemies-17f13f72 [https://perma.cc/JX23-FC7T].

threats to exact revenge against her and other perceived political enemies, has been open, frequent and well documented.

To accomplish his goal of prosecuting Attorney General James, the President first fired Erik Siebert, whom he had appointed as the Acting U.S. Attorney for the Eastern District of Virginia, who reportedly had declined to prosecute Attorney General James because he had determined there was insufficient evidence of criminality. Alan Feuer, et al., *Prosecutor Who Rejected Trump's Pressure to Charge James Is Fired*, N.Y. Times (Oct. 17, 2025), https://www.nytimes.com/2025/10/17/us/politics/trump-prosecutor-fired-letitia-james.html [https://perma.cc/VW8L-2RLZ]. Two other Assistants in that office – Maya Song, the First Assistant U.S. Attorney, as well as her replacement, Maggie Cleary – were fired as well. *Id.* The President then appointed his White House aide, a young lawyer with no criminal experience, as Acting U.S. Attorney for the Eastern District of Virginia, who then obtained a two-count indictment for Attorney General James within two weeks.[3] *Id.*

Still later, according to a report in The New York Times, Elizabeth Yusi, who oversaw major criminal cases in the Norfolk office of the U.S. Attorney's Office for the Eastern District of Virginia (the division from which the Indictment of Attorney General James originated), was fired, along with her deputy, Kristin G. Bird. According to The New York Times, Ms. Yusi told colleagues that she had found no probable cause to file charges against Attorney General James. *Id.*

Amicus, whose members include lawyers, academics and retired judges and others with decades of legal service and a strong commitment to the rule of law, urge this court to make clear

---

[3] The Acting U.S. Attorney had obtained an Indictment against Mr. Comey, who was also named in the President's *Truth Social* rant, just two days after being appointed. *See* Indictment, *United States v. Comey*, No. 1:25-cr-272 (E.D. Va. Sep. 25, 2025).

that the evidence overwhelmingly establishes that this is an unconstitutional vindictive

prosecution. As we argue below, prosecutions of perceived political enemies in retaliation for

acts they were legally entitled to take based on the personal animus of the Executive violate basic

principles of the rule of law. The series of such actions by the President, of which the current

prosecution is just one step, raises realistic – not hyperbolic – concerns that "the rights and

liberties of every American are in grave danger . . . ." [4] This will continue to be the case if the

formidable power of federal prosecution may be employed to punish people for their lawful

behavior simply because they incur the President's wrath.[5]

## ARGUMENT

I.    Proving Vindictive Prosecution

The brief accompanying Attorney General James's November 7, 2025 Motion to Dismiss

describes the law regarding vindictive prosecution. Amicus sets it out here, just briefly, for

context.

To succeed in a claim of vindictive prosecution based on direct evidence, the defendant

must show that the prosecution acted with "genuine animus towards the defendant." *United

States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). The evidence in the present case makes clear

---

[4] Ryan J. Reilly, *James Comey Case Jeopardizes Americans' Free Speech Rights, Retired Judges Warn*, NBC News (Sep. 30, 2025), https://www.nbcnews.com/politics/justice-department/james-comey-case-jeopardizes-free-speech-rights-retired-judges-rcna234774 [https://perma.cc/W73L-WHHG] (quoting a letter from former federal judges, including former Fourth Circuit Judges Michael Luttig and Andre M. Davis).

[5] "Show me the man, and I'll show you the crime," a quote attributed to Lavrentiy Beria, head of Joseph Stalin's secret police in the Soviet Union, aptly captures this vindictive use of the law.

that the nation's Chief Executive directed this prosecution based on personal and political animus to punish Attorney General James for the lawful conduct of having sued him.

First, there is direct evidence that Mr. Trump's anger was based on that fact that Ms. James, in carrying out her duly authorized responsibility as Attorney General of New York, prosecuted and obtained a judgement against the President for fraud.  It also demonstrates that Attorney General James "would not have been prosecuted but for that animus." *Id.* This is sufficient to prove a claim of vindictive prosecution,[6] the remedy for which is dismissal of the indictment. *See United States v. Wilson*, 120 F. Supp. 2d 550, 555 (ED N.C. 2000) ("It is well settled that a federal court may dismiss an indictment if the accused produces evidence of actual prosecutorial vindictiveness sufficient to establish a due process violation . . . ."), *rev'd on other grounds,* 262 F.3d 305 (4th Cir. 2001); *Blackledge v. Perry*, 417 U.S. 21, 31 n.8 (1974) ("[O]ur holding today, however, is not that Perry was denied due process by the length of the sentence imposed by the Superior Court, but rather by the very institution of the felony indictment against him."); *United States v. Goodwin*, 457 U.S. 368, 372 (1982) ("[F]or while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right."); *United States v. Santana*, 509 F. Supp. 2d 563, 565 (E.D. Va. 2007), *aff'd in part*, 352 F. App'x 867 (4th Cir. 2009) ("[V]indictive prosecution doctrine, [] bars a prosecutor from punishing a criminal defendant for exercising a clearly-established right. . . . The law therefore intercedes to prevent the government from punishing a defendant for doing what the law plainly allows him to do.").

---

[6] While most cases of vindictive prosecution concern increased charges in retaliation for pursuing an appeal, a claim may also properly lie for the initial decision to indict. *United States v. Hooton*, 662 F.2d 628, 634 (9th Cir. 1981). Evidence of the extraordinary nature of the present case is that Amicus have found no case in which the Executive retaliated because his target had sued him on behalf of the state.

Second, should the court conclude that the substantial direct evidence is insufficient to prove an improper vindictive motive, abundant circumstantial evidence supports at least a *presumption* of vindictiveness because it demonstrates a "realistic likelihood of vindictiveness," *Wilson*, 262 F.3d at 315 (quoting *Blackledge*, 417 U.S. at 27)[7], meriting discovery and an evidentiary hearing. At such a hearing, the Parties may present evidence establishing vindictiveness. For example, the defendant may present the testimony of the key actors about their actual motivations; may subpoena documents relating to the decision to initiate these charges; may subpoena correspondence between the parties relating to the decision or direction to bring the charges; may subpoena the declination memorandum prepared by the former U.S. Attorney who, according to reports, found insufficient evidence to bring the current charges; and may offer testimony concerning the extreme irregularity of a criminal referral being initiated by the Director of a the Federal Housing Finance Agency (FHFA).

II. The Evidence in This Case Establishes That This is a Vindictive Prosecution

The law cloaks the decisions of the Executive with a presumption of regularity, trusting that honorable state actors will perform their duties with impartiality.[8] A claim of vindictive

---

[7] Other evidence on publicly available sites lists scores of examples of President Trump's fury at perceived enemies, and announcing publicly for years his intention to "lock up" or prosecute numerous perceived political enemies. It also includes the strikingly similar threats surrounding the current prosecution of ex-FBI Director James Comey in this very Court who, like Attorney General James, angered the President for several reasons including Mr. Comey's insufficient loyalty to him. As with Attorney General James, the now-fired U.S. Attorney had found insufficient evidence to prosecute Mr. Comey and was fired for his refusal to bring a prosecution.

[8] Indeed, the Department of Justice lists under its *Values Statement*, "Independence and Impartiality. We work each day to earn the public's trust by following the facts and the law wherever they may lead without prejudice or improper influence." *About DOJ*, U.S. Dep't of J., https://www.justice.gov/about [https://perma.cc/M73L-53GD] (last visited Oct. 20, 2025).

The DOJ *Justice Manual*, which contains the Department's guidelines for federal prosecutors, notes their purpose as "promot[ing] the reasoned exercise of prosecutorial authority and

prosecution must therefore be supported "by a showing sufficiently strong to overcome the presumption of prosecutorial regularity." *Wilson*, 262 F.3d at 315; *see also United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("The Attorney General and the United States Attorneys retain broad discretion to enforce the nation's criminal law . . . . [T]he presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume they have discharged their official duties.")

Far from establishing a routine prosecution initiated in the regular course of business, the history of the James case provides both clear direct and circumstantial evidence of irregularity. Indeed, the evidence shows that what would once be considered "irregular" has, during the Trump administration, become the "regular." The President unabashedly, openly and explicitly is directing that his perceived political enemies be prosecuted.[9]

A.    Direct Evidence of Vindictiveness

---

contribut[ing] to the fair, evenhanded administration of the federal criminal laws." U.S. Dep't of Just., Just. Manual § 9-27.001 (2023).

It further notes that "[T]he United States Attorney is authorized to decline prosecution in any case . . . ." *Id.* § 9-2.020. The authorization to decline prosecution is exactly what happened here, before the then U.S. Attorney, and now the Assistant in the Norfolk office, were fired. The Manual further notes that "[t]he attorney for the government should commence or recommend federal prosecution if he/she believes . . . that the admissible evidence will probably be sufficient to obtain and sustain a conviction[.]" *Id.* § 9-27.220. That of course did *not* happen here, before the firing of those prosecutors for their refusal to bring a prosecution.

[9] As Ms. James brief in support of her November 7, 2025 Motion to Dismiss observes, "The foundations of the presumption of regularity, at least in the context of this case, have been greatly corroded by the Department of Justice's clear directives that prosecutors must fall in line with *any* command from the White House or risk losing their jobs: Attorney General Letitia A. James' Motion to Dismiss Indictment for Vindictive and Selective Prosecution, at 22 n. 47 (emphasis in original).

As recently noted by the court in *United States v. Garcia*, No. 3:25-cr-115, 2025 WL 2814712, *4 (M.D. Tenn. Oct. 3, 2025), "[a]ctual vindictiveness may be apparent based on [the Executive's] statements . . . ." *See also United States v. Andrews*, 633 F.2d 449, 453 (6th Cir. 1980) (*en banc*), *cert denied*, 450 U.S. 927 (1982) (noting that *Blackledge v. Perry*, 417 U.S. 21 (1974), "presented the clearest possible case of prosecutorial vindictiveness *short of an actual confession by the prosecutor*" (emphasis added)); *United States v. Velsicol Chem. Co.*, 498 F. Supp. 1255, 1266 (D.D.C. 1980) (granting a motion to dismiss for vindictive prosecution based on an "explicit threat" made by the prosecutor).

President Trump's publicly announced direction to his Attorney General quoted in full above is a demonstration of animus that alone should end the inquiry. In it, he angrily and forcefully complained that the U.S. Attorney for the Eastern District of Virginia had failed to indict Attorney General James, that she was "guilty as hell," that the now-fired U.S. Attorney had lied to the press that "we had no case," that as a result "I fired him," that "we can't wait any longer," and that "JUSTICE MUST BE SERVED NOW!!!"

It is of course clear from the President's rant that his animus flowed directly from the fact that his "enemies" held him to account. "They impeached me twice, *and indicted me* (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED, NOW!!!" (emphasis added). His civil prosecution by Attorney General James was the root of his anger and why he directed that Attorney General James be prosecuted.

In evaluating the strength of this evidence, it is useful to compare the President's own vindictive prosecution motion, filed by him in the criminal case concerning the events of January 6th. In *United States v. Trump*, No. 23-cr-257, 2024 WL 3638344 (D.D.C. Aug. 3, 2024), President Trump alleged that he was being prosecuted vindictively and pointed to statements

made by then President Biden that he should be prosecuted. The Court rejected Trump's claim based on several reasons, two of which are pertinent here.

First, the Court noted that Biden's various comments about then Mr. Trump "do not suggest that [he] 'urged' Attorney General Garland to 'take decisive action' against [Trump]." More significantly, the Court noted that:

> [T]here is no indication that President Biden ever expressed any such comments to the Attorney General or the Justice Department, much less that such comments actually resulted in politically motivated action. Indeed, the *Times* article repeatedly emphasizes that President Biden "never communicated his frustrations" to DOJ officials and publicly reiterated that "he has no role in investigative priorities or decisions."

*Trump*, 2024 WL 3638344, at *4.

The facts in Attorney General James' case of course are completely the opposite. President Trump directly contacted the Attorney General and directed her to prosecute Ms. James.

Second, the Court noted that the President had failed "to proffer a single evidentiary link between [President Biden's public criticism of him] and his indictment. 'Absent some evidentiary predicate, direct or circumstantial . . . merely chanting the mantra of prosecutorial vindictiveness' does not carry Defendant's burden." *Id.* at *6. (quoting *United States v. Ortiz-Santiago*, 211 F.3d 146, 150 (1st Cir. 2000)). In contrast, in the James case, the evidence – the firing of prosecutors who found insufficient evidence to indict, the immediate appointment of a loyal supporter to replace the fired Acting U.S. Attorney, followed by the indictment soon thereafter at the hands the newly appointed prosecutor – establishes an undeniable link. But for President Trump's animus against Attorney General James and his pressure to have her prosecuted, the prosecution would not have occurred.

Moreover, the President's instruction to indict Attorney General James followed a barrage of communications in which he railed against her and demanded that she be prosecuted, all direct evidence of his political and personal animus. Some examples include the following comments by the President:

> "New York Attorney General Letitia James Must Resign and Be Prosecuted for Abuse of Power — Her anti-Trump lawsuit is a staggering criminalization of politics" spectator.org/new-york-attorney-general-letitia-james-resign-prosecuted.

Donald J. Trump (@realDonaldTrump), Truth Soc. (Oct. 20, 2022 at 14:18 ET), https://truthsocial.com/@realDonaldTrump/posts/109105715495752629 [https://perma.cc/2MMV-3ZEM] (sharing article attacking James).

> Judge Engoron should end the ridiculous Political Witch Hunt against me. I have TOTALLY WON THIS CASE, which should never have been brought. The only Fraud was committed by A.G. Letitia James in convincing the Judge that Mar-a-Lago was only worth $18,000,000 (in order to make my "numbers" look bad), when it is worth 50 to 100 times that amount. She campaigned on "getting Trump." She should be prosecuted!

Donald J. Trump (@realDonaldTrump), Truth Soc. (Nov. 10, 2023 at 10:42 ET), https://truthsocial.com/@realDonaldTrump/posts/111387014628489419 [https://perma.cc/F2FQ-62AJ].

> Our founding fathers would be turning in their graves if they could see this. No American should be okay with a political party being weaponized against their enemies. This is not democracy, he says, this is not constitutional. This is wrong in every aspect, and the judge and the AG should be arrested and punished accordingly. How much longer can we allow this to happen in our country? And all of this is being done because we're beating them so badly at the polls.

Donald J. Trump, Address at Campaign Rally in Sioux City, Iowa (Jan. 5, 2024).

> She should be criminally liable for this … I think we should be entitled to damages.

Donald J. Trump (@realDonaldTrump), Truth Soc. (Jan. 12, 2024 at 13:49 ET), https://truthsocial.com/@realDonaldTrump/posts/111744476136007497 [https://perma.cc/Y9X7-J6UQ].

> "Turns out you can't have your principal residence in Virginia and be AG of New York. You can't say your dad's your husband. Or claim a five-unit is a four. But that's what Letitia James did—while going after Trump for the same thing. You've got to be kidding me."

Donald J. Trump (@realDonaldTrump), Truth Soc. (Apr. 18, 2025 at 0:20 ET), https://truthsocial.com/@realDonaldTrump/posts/114357043475202498 [https://perma.cc/439S-TEXS].

> [S]he's a disaster for New York. She's a horrible, horrible human being, and I think she's a total crook, there's no question about it — but that's just my opinion. . . . She's a very bad person. She's a very, very bad — a very bad person who campaigned solely on "I'm going to get Donald Trump" . . .

Steven Nelson, *Trump Calls NY AG Letitia Janes 'A Total Crook' — Says DOJ Will 'Do What's Right' on Criminal Fraud Referral*, N.Y. Post (May 6, 2025), https://nypost.com/2025/05/06/us-news/trump-calls-ny-ag-letitia-james-a-total-crook-says-doj-will-do-whats-right-on-fraud-criminal-referral/?utm_source=chatgpt.com [https://perma.cc/3TSZ-N4PV].

> Big win today against the totally corrupt and incompetent New York State Attorney General, Leticia James, and her equally incompetent, hand picked, New York State Judge. The 5 to 0 Verdict from the Appellate Division helps greatly to save the status and reputation of the New York Judicial System. Leticia James is a criminal who should be forced to resign!

Donald J. Trump (@realDonaldTrump), Truth Soc. (Aug. 22, 2025 at 1:38 ET), https://truthsocial.com/@realDonaldTrump/posts/115070802633295008 [https://perma.cc/YY9J-THJY].

And finally:

> [S]he looks very guilty of something.

Jacob Knutson, *Trump Says He Wants Removal of U.S. Attorney Overseeing Probe into Letitia James*, Democracy Dkt. (Sep. 19, 2025), https://www.democracydocket.com/news-alerts/trump-us-attorney-removed-new-york-attorney-general-letitia-james/ [https://perma.cc/WT2A-MR4R].

There could not be clearer proof of an improper political and personal animus motivating a federal prosecution of someone in retaliation for exercising her right and responsibility to bring a civil action for fraud, as Section II(C) below describes, resulting in a judgment upheld on appeal, albeit one that set aside the financial penalty. *People v. Trump*, 237 N.Y. S.3d 443 (N.Y. App. Div. 2025).

B.    Overwhelming Circumstantial Evidence of Animus Motivating Prosecution

If the direct evidence cited above fails to meet the burden of establishing actual animus, the circumstantial evidence amply establishes a "realistic likelihood" of a vindictive motive.

The campaign against Attorney General James is but one part of the President's longstanding campaign against his perceived political enemies and his explicit demands that they be prosecuted and jailed. The Court may properly consider that those demands and comments provide strong circumstantial proof of his intent. *See* Fed. R. Evid 404(b) (allowing evidence of other acts to prove motive and intent).[10] Many such statements appear in social media posts and news reports. Here are just several notable statements:

---

[10] See the October 16, 2025 report, *Accelerating Authoritarian Dynamics: Assessment of Democratic Decline*, issued by The Steady State, whose members are former U.S. Intelligence Community officers with analytic responsibilities. The Report concludes that multiple administration actions are "placing the nation on a trajectory toward competitive authoritarianism: a system in which elections, courts, and other democratic institutions persist in form but are systematically manipulated to entrenched executive control." *Accelerating Authoritarian Dynamics: Assessment of Democratic Decline*, Steady State (Oct. 16, 2025), https://steadystate1.substack.com/p/accelerating-authoritarian-dynamics [https://perma.cc/YHD3-398X].

Among those actions, under the heading "Weaponization of Justice Against Rivals," the report specifically notes the indictments of former FBI Director James Comey and New York Attorney General Letitia James, brought days after the President publicly pressured the Attorney General to go after enemies, and the repeated threats to indict former CIA Director John Brennan, former Director of National Intelligence James Clapper, and former President Barack Obama. *Id.*

> If given the opportunity, I will get even with some people that were disloyal to me.

Charlie Rose, *Donald Trump*, at 41:53 (CharlieRose.com, Nov. 6, 1992), https://charlierose.com/guests/6048 [https://perma.cc/5D6H-4L22].

> I would be entitled to a revenge tour, if you want to know the truth, but I wouldn't do that.

Maggie Haberman & Shane Goldmacher, *Trump, Vowing 'Retribution,' Foretells a Second Term of Spite*, N.Y. Times (Mar. 7, 2023), https://www.nytimes.com/2023/03/07/us/politics/trump-2024-president.html [https://perma.cc/BU6J-39FJ].

> In 2016, I declared, "I am your voice" . . . Today, I add: I am your warrior. I am your justice. And for those who have been wronged and betrayed, I am your retribution . . . I am your retribution.

*Id.*

> Deranged Jack Smith, in my opinion, is a criminal. * * * I hope they're looking at all these people.

Malcolm Ferguson, *Trump Makes Clear No One Can Rule Against Him as He Threatens Enemies*, New Republic (Oct. 15, 2025), https://newrepublic.com/post/201828/trump-chief-law-enforcement-officer-threatens-enemies [https://perma.cc/DH9U-JEP7].

> While Congress is at it, they should look at the Corrupt Attorney General of New York State, Letitia James, who got elected solely on a "I WILL GET TRUMP" platform, without knowing anything about me. She then brought a completely bogus lawsuit, which is presided over by an A.G. picked, Trump hating Judge, a political hack whose Court this case should not be in - It should be in the Commercial Division, but he wouldn't let go, is pushing it hard, and knows exactly what he wants to do....

Donald J. Trump (@realDonaldTrump), Truth Soc. (Mar. 21, 2023 at 12:38 ET), https://truthsocial.com/@realDonaldTrump/posts/110062253047408441 [https://perma.cc/3654-9XXR].

Separately, in the determination of whether or not proof of a politically based animus

motivated the indictment against Attorney General James, the Court should weigh the fact that

before a new prosecutor was tasked with the goal of obtaining an indictment against Ms. James,

the Acting U.S. Attorney in the Eastern District, and then the head of the Criminal division in

that office, *both declined to prosecute*. According to reports, both determined that there was insufficient evidence of a crime. This is notable given that Justice Department guidelines do not require that the prosecuting office have proof beyond a reasonable doubt of the target's alleged criminal act. Rather, prosecution is permitted "if [the prosecutor] believes . . . that the admissible evidence will *probably* be sufficient to obtain and sustain a conviction[.]" U.S. Dep't of Just., Just. Manual § 9-27.220 (2023) (emphasis added).

　　Adding to the unlikelihood that a prosecution would ever be brought in the Eastern District, and thus to the "irregularity" of the prosecution, is Amicus's experience that typical practice in that district would be to decline prosecution because the amount of actual or intended loss involved in the alleged mortgage fraud here was below the usual threshold to initiate federal prosecution. Rather, in Amicus' experience, the typical case, the matter would have been referred to local state prosecutors because of the absence of a federal interest in prosecution.

　　Moreover, the circumstances which sparked the decision to prosecute are themselves remarkable. According to media reports, the genesis of the prosecution did not begin with an aggrieved bank claiming it was defrauded. Rather, according to reports, the case originated in April 2025, when William Pulte, Director of the Federal Housing Finance Agency and a Trump appointee, made a criminal referral about the James mortgage to the Department of Justice.[11] The Director of the FHFA would, in the regular conduct of his business, have no call to review someone's mortgage application papers. Upon information and belief, for a criminal case to begin this way is less than vanishingly rare – it has likely *never happened* – and thus raises the possibility that the Director was instructed, without any existing evidence, to review the agency's

---

[11] Jonah Bromwich & Devlin Barrett, *James Indictment Mirrors Her Civil Case Against Trump in Miniature*, N.Y. Times (Oct. 10, 2025), https://www.nytimes.com/2025/10/10/nyregion/trump-james-indictment-retribution.html [https://perma.cc/SA58-AV6D].

records to see if a claim of irregularity might turn up regarding Attorney General James. If that is true, it is further evidence of a search for a crime based on the desire to prosecute an individual, rather than, as should be the case, a search for evidence of a crime that may ultimately implicate someone. The extensive and relentless circumstantial evidence more than meets the showing required for establishing a presumption of vindictiveness: that "a reasonable likelihood of vindictiveness exists." *Goodwin*, 457 U.S. at 373.

> C.    This Vindictive Prosecution Retaliates for Acts the Law Plainly Entitled Attorney General James to Take.

While each of the Supreme Court's decisions in the realm of vindictive prosecution has focused on retribution for exercise of a constitutional right, *see North Carolina v. Pearce*, 395 U.S. 711 (1969); *Blackledge v. Perry*, 417 U.S. 21 (1974); *Bordenkircher v. Hayes*, 434 U.S. 357 (1978); *United States v. Goodwin*, 457 U.S. 368 (1982), the Fourth Circuit and fellow Circuits have made abundantly clear that government action sufficient to support a claim of vindictive prosecution may be based as well on the exercise of a statutory right. *See, e.g., United States v. Villa*, 70 F.4th 704, 710 (4th Cir. 2023) ("A prosecutor violates the Due Process Clause of the Fifth Amendment by punishing a defendant for 'exercising a protected statutory or constitutional right.'" (quoting *United States v. Fiel*, 35 F.3d 997, 1007 (4th Cir. 1994), *cert. denied*, 513 U.S. 1177 (1995)); *United States v. Adams*, 870 F.2d 1140, 1145 (6th Cir. 1989) (remanding for evidentiary hearing based on finding that "[t]he broad discretion accorded prosecutors in deciding whom to prosecute is not 'unfettered,' and a decision to prosecute may not be deliberately based upon the exercise of protected statutory rights"), *United States v. Amerson*, 38 F.3d 1217 (1994) (affirming district court's denial of vindictive prosecution motion), *cert. denied*, 514 U.S. 1056 (1995); *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001) ("It is now well established that a prosecutor violates the Due Process Clause of the Fifth

Amendment by exacting a price for a defendant's exercise of a clearly established right or by punishing the defendant for doing what the law plainly entitles him to do.").[12] This underscores the basic principle that the rule of law forbids persons from suffering at the hands of the government for engaging in ordinary legal activities.

This is particularly true where the activity at issue is not only permitted but is done in the name of the governed and specifically authorized by law, as is the case with Attorney General James, who is the elected chief legal officer for the State of New York. Among other functions, she is given authority by state law to bring civil prosecutions for fraudulent business practices. *See* N.Y. Exec. Law § 63 (2025):

> General Duties. The Attorney-General shall:
>
> 1. Prosecute and defend all actions and proceedings in which the state is interested, and have charge and control of all the legal business of the departments and bureaus of the state, or of any office thereof which requires the services of the attorney general, in order to protect the interests of the state, . . . .
>
> * * *
>
> 12. Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court . . . . for an order enjoining the continuance of such business activity or of any of the fraudulent or illegal acts . . . .
>
> * * *

As noted by the trial court, and affirmed by the appellate court, the case against the President which included civil fraud violations, was authorized by and properly within the statutory duties of the Attorney General. *People v. Trump*, No. 452564/2022, 2022 WL 16699216, at *1 n.1 (N.Y. Sup. Ct. Nov. 3, 2022)

---

[12] In *United States v. Adams*, for example, the Sixth Circuit remanded for an evidentiary hearing on a claim of vindictive prosecution where the act which allegedly resulted in the decision to prosecute was the filing of an EEOC complaint.

> OAG [Office of the Attorney General] brings this action exclusively under New York Executive Law § 63(12) but alleges violations of New York Penal Law § 175.10 (Falsifying Business Records), New York Penal Law 175.45 (Issuing a False Financial Statement), and New York Penal Law § 176.05 (Insurance Fraud) to demonstrate defendants' propensity to commit fraud.

*See also People v. Trump*, No. 452564/2022, 2023 WL 6307177, at *3 (N.Y. Sup. Ct. Sep. 26, 2023) ("As this Court and others have made abundantly clear, '[i]t is not disputed that the Attorney General is empowered to sue for violations of [Executive Law § 63(12)].'").  And as the Appellate Division stated, "[w]e agree with Supreme Court that the Attorney General acted well within her lawful power in bringing this action, and that she vindicated a public interest in doing so." *Trump*, 237 N.Y. S.3d at 446 (Moulton, J., concurring).

III.   This Prosecution Raises Significant Concerns that Implicate Basic Principles of the Rule of Law.

Amicus's members have been involved in decades of work in all aspects of the American justice system. We have been defenders, prosecutors, judges and legal scholars. The criminal prosecution of Attorney General James and others whom the President perceives as enemies, and threats to prosecute yet others, is fundamentally at odds with the basic precepts of the American criminal justice system and the rule of law in general. As noted by Professors Bruce Green and Rebecca Roiphe,

> Prosecutorial independence has become a cornerstone of American democracy, built into the way the country is governed. Although no constitutional provision or statute explicitly establishes prosecutorial independence, neither does any law expressly grant the President absolute power over federal prosecutions. . . . Prosecutors' professional obligation of federal independence . . . limits the President's ability to control individual investigations or prosecutorial decisions.

Bruce A. Green & Rebecca Roiphe, *Can the President Control the Department of Justice?*, 70 Ala. L. Rev. 1, 4 (2018).

Early on, it was understood and well accepted that the independence of the prosecutor would serve as an important check on partisan politics. *Id.* at 5. As noted by Green and Roiphe, "[t]hese norms are vital to protect the democratic values of equality and fairness in the administration of the criminal law from the encroachment of partisan politics." *Id.* While the President may shape policy and establish law enforcement priorities, "partisan politics and personal interest must play no role in determining the course of individual cases." *Id.* at 6. And while the President has the power to appoint and fire the Attorney General and the various United States Attorneys, that power "does not necessarily imply the power to instruct subordinate officials how to do their jobs." *Id.* at 10.

In 1978, in the wake of the Watergate revelations, Attorney General Griffin Bell addressed lawyers at the Department of Justice in an effort to right the ship and repair the damage done to the perception of justice. He called his talk "Independence of the Department of Justice." Bell said that the excesses of Watergate had "given rise to an understandable public concern that some decisions at Justice may be the products of favor, or pressure, or politics." Griffin B. Bell, Attorney General of the United States, Address Before Department of Justice Lawyers (Sep. 6, 1978). He outlined several measures he believed would protect against those abuses in the future, and they have largely been followed for the ensuing decades.

The first of those was the need to establish rules to ensure that personal, political or partisan interests did not influence or dictate the judgments of DOJ attorneys. Acknowledging that under the Constitution, the Attorney General remains responsible to the President, he added:

> Although true institutional independence is therefore impossible, the President is best served by the Attorney General and the lawyers who assist him are free to exercise their professional judgments.

18

*Id.* After setting out new protocols concerning decision-making and outside influence, the

Attorney General continued:

> It is not at all improper for persons outside the Department, whether or not they are in positions of power, to attempt to influence our *general policies* concerning the investigation and prosecution of crime and the enforcement of civil statutes.

> We welcome criticism and advice. In my judgement, however, it is improper for any member of Congress, any member of the White House staff, or anyone else, to attempt to influence anyone in the Justice Department with respect to a *particular litigation decision*, except by legal argument or the provision of relevant facts. This principle is essential to our proper function, because litigation decisions are frequently discretionary.

> The ultimate criterion is that they be fair. We at Justice are not infallible, but the awesome responsibility for wielding our power is ours alone. Criticism after the fact is perfectly proper. Criticism before the fact must be channeled so that fairness is not cheated, and Justice is served.

> Our notions of fairness must not change from case to case; they must not be influenced by partisanship, or the privileged social, political or interest-group position of either the individuals involved in particular cases, or those who may seek to intervene against them or on their behalf.

> \* \* \*

> [As a result of what happened in Watergate, we] may now be in a position to establish firmly the tradition that the Attorney General and the lawyers under him must be free from outside influence in reaching professional judgments on legal matters.

*Id.* (emphasis added).  The Attorney General thus made a sharp distinction between influencing

prosecutorial policies on the one hand and influencing decisions to prosecute on the other.

In the years since Watergate (until the present day), the principle of prosecutorial

independence has been foundational:

> Senators have regarded a commitment to independence from the President as an essential qualification for the position [of Attorney General]. DOJ officials assume that prosecutorial decisions should not be influenced by partisan political considerations that may motivate the White House.

Green & Roiphe, *supra*, at 4.

The government may argue that the President's immunity from criminal prosecution for directing criminal investigation and prosecution under *Trump v. United States* precludes any claim of vindictive prosecution. Even assuming for the purposes of argument the government's expansive interpretation of what that decision permits the President to do, it does not disable the judicial branch from exercising its authority to determine if criminal charges should be dismissed. As Professor Morrison has emphasized, whatever authority the President may have, "that does not include the power to control the outcome of a case once it is brought to court." Trevor W. Morrison, *All the President's Men* 36 (2025). As Professor Morrison says, the President is not entitled "to invoke the courts himself and then to dictate the resolution of the case. To conclude otherwise would be to allow the executive power of prosecution to swallow the judicial power itself." *Id.* at 37.

When President Ford appointed Edward Levi as Attorney General in 1975, he declared that he wanted an Attorney General who would "protect the rights of American citizens, not the President who appointed him." Gerald R. Ford, *A Wise Man: U.S. Attorney General Edward H. Levi*, Wall St. J. (Dec. 28, 2006), ttps:/www.wsj.com/public/resources/documents/levi122806.pdf [https://perma.cc/W43M-JP7P]. And when inducted, Levi declared, "[N]othing can more weaken the quality of life or more imperil the realization of those goals we all hold dear than our failures to make clear by word and deed that our law is not an instrument of partisan purpose. . . " *Restoring Justice: The Speeches of Attorney General Edward H. Levi* (Jack Fuller ed., 2013).

Basic constitutional principles demand that citizens be free from prosecution based on the whim of the Executive. "To permit criminal prosecutions to be initiated on the basis of arbitrary or irrational factors would be to transform the prosecutorial function from one protecting the public interest through impartial enforcement of the rule of law to one permitting the exercise of

prosecutorial power based on personal or political bias." *United States v. Torquato*, 602 F.2d

564, 568 (3d Cir. 1979), cert. denied, 441 U.S. 941 (1979). Equal protection principles prohibit

charging decisions that are "'deliberately based upon an unjustifiable standard such as race,

religion, or other arbitrary classification,' including the exercise of protected statutory and

constitutional rights." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (quoting *Bordenkircher*,

344 U.S. at 364).

      The message sent by the President's persistent public haranguing of Attorney General

James and directing that she be prosecuted threatens to diminish the rule of law in the eyes of the

public, as Attorney General Levi warned.

      In Amicus's view, President Trump's brazen actions send a clear message to the public –

the criminal justice system can be bent to the will of a vindictive leader who uses his position to

demand prosecution of disfavored citizens. This is a dangerous result and one which should be

stopped at the courthouse door rather than the jury room.

## CONCLUSION

      The mission statement of Lawyers Defending American Democracy states that "as

members of the legal community, we have a unique responsibility to defend the Constitution and

the values on which our democracy depends." The facts of this case establish a clear threat to

those values.

      Every aspect of the history of this prosecution establishes that it is animated by the

President's desire to use the enormous power of federal criminal prosecution to seek revenge

against Attorney General James. The case therefore should be dismissed as a vindictive

prosecution.

Respectfully Submitted,
LAWYERS DEFENDING AMERICAN
DEMOCRACY

By:

Jonathan Shapiro
Virginia Bar # 13953
Room 441
Washington and Lee University Law School
Denny Circle
Lexington, Virginia    24550
(703) 217-7455
Shapiroj@wlu.edu

## CETIFICATE OF SERVICE

I hereby certify that on November 14, 2025, I electronically filed the foregoing document

with the United States District Court for the Eastern District of Virginia, Norfolk Division, using

the CM/ECF system, which will send notice of the filing to all counsel of record, and that I sent

all counsel the same document by email.

Jonathan Shapiro
Counsel for Amicus

22