**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *  Case No. 2:25-cr-122-JKW-DEM |
| | * |
| LETITIA A. JAMES, | * |
| | * |
| Defendant. | * |
| | * |
| *    *    *    *    *    *    * | |

**ATTORNEY GENERAL LETITIA A. JAMES'S MOTION TO DISMISS**
**THE INDICTMENT FOR OUTRAGEOUS GOVERNMENT CONDUCT**

Attorney General Letitia A. James, by and through undersigned counsel, moves this Court to dismiss the government's indictment pursuant to Federal Rule of Criminal Procedure 12(b).  As explained further below, multiple government actors engaged in outrageous conduct to obtain the indictment, in violation of the Due Process Clause of the Fifth Amendment.  Because this prosecution is patently unconstitutional, this Court should dismiss the indictment with prejudice.

**Table of Contents**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

   A.    Transforming the FHFA Into a Political Weapon...................................... 2

   B.    Outrageous Government Conduct at the Department of Justice............................ 6

      1.    Ed Martin's Outrageous Conduct................................................. 6

      2.    Lindsey Halligan, Whose Only Credential is Loyalty, is Installed as U.S.
            Attorney.................................................................................. 9

   C.    After Ignoring the Evidence and Removing Resistance, an Indictment is
         Returned................................................................................................. 12

III.   ARGUMENT ..................................................................................................... 13

   A.    The Indictment Against AG James Should Be Dismissed Because This
         Prosecution Arises from Outrageous Government Conduct................................. 13

   B.    This Court Should Exercise Its Supervisory Powers to Dismiss the
         Indictment. ...................................................................................................... 15

   C.    In the Alternative, Attorney General James is Entitled to Discovery to Further
         Demonstrate the Illegal Basis for the Charges Against Her................................. 16

IV.    CONCLUSION................................................................................................... 17

## Table of Authorities

**Cases**

*Berger v. United States*,
   295 U.S. 78 (1935) ................................................................................................................ 9

*Cnty. of Sacramento v. Lewis*,
   523 U.S. 833 (1998) ............................................................................................................. 17

*Hampton v. United States*,
   425 U.S. 484 (1976) ............................................................................................................. 16

*Herndon v. Johnson*,
   1992 WL 152713 (E.D. Mich. Apr. 7, 1992) ...................................................................... 17

*Olmstead v. United States*,
   277 U.S. 438 (1928) ............................................................................................................. 16

*Rochin v. California*,
   342 U.S. 165 (1952) ............................................................................................................. 16

*United States v. Banks*,
   383 F. Supp. 389 (D.S.D. 1974) .......................................................................................... 18

*United States v. Bundy*,
   968 F.3d 1019 (9th Cir. 2020) ............................................................................................. 18

*United States v. Dyess*,
   478 F.3d 224 (4th Cir. 2007) ............................................................................................... 19

*United States v. Hasan*,
   718 F.3d 338 (4th Cir. 2013) .......................................................................................... 4, 16

*United States v. Hasting*,
   461 U.S. 499 (1983) ............................................................................................................. 18

*United States v. Marshank*,
   777 F. Supp. 1507 (N.D. Cal. 1991) .................................................................................... 18

*United States v. Osborne*,
   935 F.2d 32 (4th Cir. 1991) ........................................................................................... 4, 16

*United States v. Ross*,
   372 F.3d 1097 (9th Cir. 2004) ............................................................................................. 18

*United States v. Russell*,
   411 U.S. 423 (1973) ............................................................................................................. 16

*United States v. Twigg*,
   588 F.2d 373 (3d Cir. 1978) ................................................................................................ 16

**Statutes and Regulations**

12 CFR § 1239.20(a)(2) ................................................................................................ 6

12 U.S.C. § 4512(g)(2) ................................................................................................. 5

12 U.S.C. §§ 4501 et seq. ............................................................................................. 6

28 U.S.C. § 546 ................................................................................................... 12, 14

## I.    INTRODUCTION

Attorney General James has already moved to dismiss this indictment in response to the improper procedures and motives that led to its return.  ECF Nos. 22, 53.  This motion seeks dismissal on the independent ground that this indictment is the result of outrageous government conduct, starting with that of Federal Housing Finance Agency (FHFA) Director William Pulte, in violation of AG James's due process rights.  Outrageous government conduct prohibited by the Due Process Clause is conduct that is "'shocking,' or 'offensive to traditional notions of fundamental fairness.'"  *United States v. Hasan*, 718 F.3d 338, 343 (4th Cir. 2013) (quoting *United States v. Osborne*, 935 F.2d 32, 37 (4th Cir. 1991)).  Perhaps in no case before this Court has there been a more shocking course of government conduct.  The unprecedented, extensive, and outrageous misconduct in this case reached its apex when President Donald Trump, as part of his revenge campaign, decided that AG James needed to be indicted, no matter the cost.  Years of relentlessly calling AG James a crook and a criminal reached a crescendo when President Trump posted on *Truth Social*:[1]



Donald J. Trump
@realDonaldTrump

Pam: I have reviewed over 30 statements and posts saying that, essentially, "same old story as last time, all talk, no action. Nothing is being done. What about Comey, Adam "Shifty" Schiff, Leticia??? They're all guilty as hell, but nothing is going to be done." Then we almost put in a Democrat supported U.S. Attorney, in Virginia, with a really bad Republican past. A Woke RINO, who was never going to do his job. That's why two of the worst Dem Senators PUSHED him so hard. He even lied to the media and said he quit, and that we had no case. No, I fired him, and there is a GREAT CASE, and many lawyers, and legal pundits, say so. Lindsey Halligan is a really good lawyer, and likes you, a lot. We can't delay any longer, it's killing our reputation and credibility. They impeached me twice, and indicted me (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED, NOW!!! President DJT

16k ReTruths    53k Likes                    Sep 20, 2025, 6:44 PM

---

[1]    Donald Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025), https://truthsocial.com/@realDonaldTrump/posts/115239044548033727.

1

This indictment is the product of months of illegal and unethical behavior by government officials, only made possible by the misuse of a federal agency, the disregard of exculpatory evidence, the systematic removal of ethics officials and career prosecutors who stood in the way, and the improper attempt to install an unqualified U.S. Attorney with nothing to offer except undying loyalty.  If this brazen, continuous disregard for the law and the Constitution is not outrageous government conduct, nothing is.

## II.    BACKGROUND

### A.  Transforming the FHFA Into a Political Weapon.

In March 2025, William Pulte began his tenure as FHFA Director and quickly transformed the little-known agency into a weapon to be brandished against President Trump's political enemies.  As FHFA Director, Pulte is tasked with regulating the Federal National Mortgage Association (known as Fannie Mae), the Federal Home Loan Mortgage Corporation (known as Freddie Mac), and the Federal Home Loan Banking System.[2]  Although Fannie Mae and Freddie Mac remain private corporate entities, since the 2008 financial crisis, the FHFA has served as their conservator.[3]  Mere days after being sworn in, on March 17, 2025, Director Pulte fired 14 members from the boards of Fannie Mae and Freddie Mac and appointed himself chairman of both entities.[4]  No justification was given for the firings.  This deeply troubling consolidation of power violates federal law and the FHFA's own regulations.  Federal law prohibits the FHFA Director from holding any office, position, or employment in Fannie Mae and Freddie Mac.[5]  According to

---

[2] *See FHFA at-a-Glace*, U.S. Federal Housing (Mar. 8, 2024), https://www.fhfa.gov/about.

[3]    *See    Conservatorship*,    U.S.    Federal    Housing    (Feb.    6,    2024), https://www.fhfa.gov/conservatorship.

[4] *See* Katherine Hamilton & Connor Hart, *FHFA Director To Head Fannie Mae, Freddie Mac Boards    Amid    Shake-Ups*,    Wall    Street    Journal    (Mar.    17,    2025), https://www.wsj.com/finance/regulation/fhfa-director-to-head-fannie-mae-freddie-mac-boards-amid-shake-ups-0b8ef5a6.

[5] 12 U.S.C. § 4512(g)(2).

FHFA's regulations, the chairperson of the Fannie Mae and Freddie Mac boards must be independent of FHFA.[6] As FHFA Director, Pulte is the furthest thing from independent.

On April 14, 2025, Director Pulte sent a criminal referral letter[7] to U.S. Attorney General Pamela Bondi, alleging AG James "falsified bank documents and property records to acquire government backed assistance and loans and more favorable loan terms" as related to properties in Brooklyn, New York, Queens, New York, and on Sterling Street in Norfolk, Virginia. Ex. A.[8] Just one day later, someone from inside the administration leaked Director Pulte's criminal referral letter to the *New York Post*.[9]

After the issuance of the referral letter, according to recently produced discovery, an expansive and fast-growing investigation into AG James's properties, and related mortgages, took off within FHFA and Fannie Mae. On April 17, 2025, Fannie Mae requested the "James loan file" from mortgage servicer Mr. Cooper. Ex. C. On April 18, FHFA Office of Inspector General sent a "Demand for Document Production" to the Federal National Mortgage Association director, seeking access to records, reports and documents concerning AG James's Peronne Property. Ex. D. Also on April 18, a Fannie Mae fraud investigator sent emails attaching social media posts by AG James's great-niece, Nakia Thompson. Ex. E. And on April 25, mortgage servicer Mr. Cooper received a request to investigate potential misrepresentation of occupancy concerning the Peronne

---

[6] 12 CFR § 1239.20(a)(2).

[7] The statute Director Pulte cites as his authority—the Federal Housing Enterprises Financial Safety and Soundness Act of 1992—provides no authority for the FHFA Director to make criminal referrals. *See* 12 U.S.C. §§ 4501 et seq.

[8] Shortly after the criminal referral letter was leaked, counsel for AG James wrote to AG Bondi, refuting all of the allegations in the criminal referral letter. Ex. B. Notably, none of the crimes alleged, or even the properties referenced, in the referral letter were included in the indictment. Once those allegations were refuted, Trump administration officials had to find something else.

[9] *See* Josh Christenson & Victor Nava, *Trump administration refers NY AG Letitia James for potential prosecution over alleged mortgage fraud*, N.Y. Post (Apr. 15, 2025), https://nypost.com/2025/04/15/us-news/trump-administration-refers-ny-ag-tish-james-for-prosecution.

property and AG James.  Ex. F.  Discovery reveals that the investigation continued unabated within FHFA and Fannie Mae throughout May, June, July and August 2025.

Despite the fact that the criminal referral purports to be based on "media reports," no credible media reports remotely related to the allegations predate the referral.  The origin of the exhibits to the referral are equally suspect.  The FHFA does not house individual mortgage documents in its own system,[10] but Fannie Mae does.[11]  Many of the exhibits referenced in the referral were available from a single source (which also contains the only "reporting" on the allegations that predate the referral letter): the blog of a right-wing "investigator," Sam Antar, who has claimed credit for providing Director Pulte with the facts necessary for the criminal referral.[12]  Accordingly, in crafting the criminal referral letter and the attached exhibits, Director Pulte either (1) relied exclusively on a single fringe blogger's "evidence" that AG James committed fraud, (2) took it upon himself to purchase these documents from various county clerk offices, or (3) unlawfully accessed AG James's loan files from Fannie Mae's database.  Any one of these three most likely possibilities constitutes outrageous government conduct by the FHFA Director.

Fannie Mae ethics and investigations groups were so concerned that Director Pulte may have improperly and illegally accessed mortgage documents that they launched a probe into how

---

[10] The FHFA does collect *data* on mortgages for oversight and regulatory purposes.  *See, e.g.*, *National Mortgage Database Program*, U.S. Federal Housing (Oct. 24, 2025), https://www.fhfa.gov/programs/nmdb.

[11] *See, e.g.*, *Selling Guide*, Fannie Mae (Nov. 5, 2025), A2-4.1-02 (Ownership and Retention of Loan Files and Records); A2-4.1-01(Establishing Loan Files), A3-3-05 (Custody of Mortgage Documents), https://selling-guide.fanniemae.com.

[12] *See* Sam Antar, *When The Wall Street Journal Tries to Make Letitia James' Public Records Disappear*, White Collar Fraud (Nov. 11, 2025), https://whitecollarfraud.com/2025/11/11/when-the-wall-street-journal-tries-to-make-letitia-james-public-records-disappear.  However, for the Director of FHFA to go beyond his statutory mandate and send a criminal referral *solely* on the uncorroborated findings of an internet investigator, without conducting *any* due diligence of his own, is possibly more outrageous than his misuse of Fannie Mae databases.

4

he obtained AG James's mortgage documents.[13]  According to reporting, "Fannie's ethics and investigations group had received internal complaints alleging senior officials had improperly directed staff to access the mortgage documents of James and others" and investigators had been "probing to find out who had made the orders, whether Pulte had the authority to seek the documents, and whether or not they had followed proper procedure."[14]

Intent on covering his tracks, instead of allowing the internal investigation to continue, Director Pulte fired about a dozen members of the ethics and investigations units.[15]  According to reporting, the internal complaint alleging Director Pulte improperly obtained AG James's mortgage records was sent to prosecutors in the U.S. Attorney's Office in Norfolk by former FHFA acting Inspector General Joe Allen—who believed "[t]he information he turned over was constitutionally required" and/or "potentially relevant in discovery."[16]  For doing so, the acting Inspector General was fired from the Agency by Director Pulte—presumably because the information could be material to AG James's defense.[17]

After making the referral to DOJ, Director Pulte continued to pursue his own investigation, even when employees of Fannie Mae themselves believed there was insufficient evidence of wrongdoing.  On June 13, 2025, Sean Soward (Fannie Mae Director of Mortgage Fraud

---

[13] *See* Gina Heeb, Brian Schwartz, & C. Ryan Barber, *Fannie Mae Watchdogs Probed How Pulte Obtained Mortgage Records of Key Democrats*, Wall Street Journal (Nov. 11, 2025), https://www.wsj.com/finance/regulation/fannie-mae-watchdogs-probed-how-pulte-obtained-mortgage-records-of-key-democrats-07c5cc39?st=s1pWNM&reflink=article_copyURL_share.

[14] *Id.*

[15] *See* Gina Heeb, Josh Dawsey, & Rebecca Ballhaus, *He's Called 'Little Trump' and His Tactics Are Rankling White House Top Brass*, Wall Street Journal (Nov. 15, 2025), https://www.wsj.com/politics/policy/bill-pulte-profile-d000c844?st=QuC5th&reflink=desktopwebshare_permalink.

[16] Sarah N. Lynch, Chris Prentice & Marisa Taylor, *Exclusive: Trump ousts watchdog of US housing regulator involved in mortgage probes of his foes, sources say*, Reuters (Nov. 3, 2025), https://www.reuters.com/world/us/watchdog-being-ousted-us-housing-regulator-involved-trump-crackdown-sources-say-2025-11-03/.

[17] *See* Heeb et al., *supra* note 13.

Investigations) told Jennifer Horne (Fannie Mae Vice President of Financial Crimes): "the LJ case is certainly not clear and convincing evidence" of fraud.  Ex. G.  Ms. Horne responds, "director asking how we know that the neice [*sic*] has lived there since oct 2020," clearly demonstrating Director Pulte's intimate and direct involvement in the investigation.

### B.  Outrageous Government Conduct at the Department of Justice.

### 1.  Ed Martin's Outrageous Conduct.

Ed Martin—who according to his letterhead, is U.S. Pardon Attorney/Special Attorney for Mortgage Fraud/Associate Deputy Attorney General/Director of the Weaponization Working Group—has engaged in a well-documented series of actions that cannot be described as anything but outrageous.  On August 12, 2025, while a pending investigation was underway that Mr. Martin was supposed to be leading, he sent AG James's counsel a letter insisting that she "resign from office" because, in his view, it "would best serve the 'good of the state and nation'" and "give the people of New York and America more peace than proceeding."  Ex. H.  Mr. Martin also stated that "[he] would take this as an act of good faith" if she were to resign from office.  *Id.* at 1.  The letter was not an attempt to investigate the facts, nor did it hide his plain intention to pressure the sitting Attorney General of New York to resign from office or face criminal prosecution.  When he wrote that letter, Mr. Martin was acting in his official capacity as Special Attorney for Mortgage Fraud and Director of the Weaponization Working Group.

The letter, by itself, violated Justice Department rules, the Principles of Federal Prosecution, and various codes of professional responsibility and ethics.  "Special Attorneys," like other DOJ attorneys, are supposed to be objective in seeking the facts and applying the correct law.  *See, e.g.*, *Berger v. United States*, 295 U.S. 78, 88 (1935) (U.S. Attorneys' "obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done .... [W]hile he may

6

strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."). Yet Mr. Martin's first communication to AG James had neither a pretense of objectivity nor actual investigative goals. Instead, he twice commanded AG James to resign from office, under threat of federal prosecution. DOJ has firm policies *against* using investigations and prosecutorial power for achieving political ends such as forcing a public official to resign.[18] This is ever more the case when that demand is made to seek political revenge against a public official in the opposing party.

Just two days later, on August 14, Mr. Martin orchestrated a bizarre media stunt where he and a DOJ colleague traveled to Brooklyn, New York, to visit AG James's private home there and stage a photo opportunity in front of it for the *New York Post*.[19] The *Post*, with a photographer in tow, was there to capture the moment for Mr. Martin, adorned in an Inspector Gadget-inspired beige trenchcoat, in the middle of an August summer day. And in what could only reasonably be construed as an attempt to intimidate AG James, a few days later, Mr. Martin posted a photo of himself in front of her home on his official DOJ X account.[20] All this occurred while a federal

---

[18] *See, e.g.*, Criminal Justice Standards for the Prosecution Function, Standard 3-1.6(a) (Am. Bar. Ass'n 2017) ("A prosecutor should not use other improper considerations, such as partisan or political or personal considerations, in exercising prosecutorial discretion."); Justice Manual (JM) 1-8.600, *Communication with the White House* ("The Assistant Attorneys General, the United States Attorneys, the heads of the investigative agencies, and their subordinates have the primary responsibility to initiate and supervise law enforcement investigations and cases. In order to insulate them from inappropriate influences, initial communications between the Department and the White House concerning pending or contemplated law enforcement investigations or cases will involve only the Attorney General or Deputy Attorney General, and the Counsel or a Deputy Counsel to the President (or the President or Vice President)").

[19] Miranda Devine, *DOJ Special Attorney Ed Martin Checks Out Tish James' 'Mortgage Fraud' Home After Being Tapped for Probes*, N.Y. Post (Aug. 15, 2025), https://nypost.com/2025/08/15/us-news/special-attorney-ed-martin-checks-out-tish-james-mortgage-fraud-home/.

[20] *See* Ed Martin (@EdMartinDOJ), X (Aug. 20, 2025), https://perma.cc/YEC2-BRZ6.

grand jury investigation concerning AG James was open and ongoing. It is clear Mr. Martin—a high-ranking official in the United States Department of Justice—undertook these strange antics to intimidate and prejudice AG James outside the bounds of DOJ and relevant ethics rules.

There is no conceivable legitimate reason for Mr. Martin to stalk AG James's home. After telling neighbors that day he was "just happy to be on a block looking at houses . . . just looking at houses, interesting houses,"[21] he told *Fox News* just the opposite two days later: "I'm a prosecutor . . . I wanted to lay eyes on it. . . . I wanted to see the property."[22] DOJ rules and policies, as well as rules of professional conduct, squarely address prosecutors seeking to harass or even speak with a represented person such as AG James, or use media to announce investigations.[23] Likewise, the Local Criminal Rules of this District dictate that, with respect to grand jury proceedings or pending criminal investigations, "a lawyer participating in or associated with the investigation shall refrain from making any extrajudicial statement which a reasonable person would expect to be disseminated, by any means of public communication, that *goes beyond the public record or that is not necessary to inform the public* that the investigation is underway, to describe the general scope of the investigation . . . or otherwise to aid in the investigation." Loc. Crim. R. 57.1(B) (emphasis added). Local Criminal Rule 57.1(D) also prohibits prosecutors from releasing "any extrajudicial statement or interview relating to the trial or the parties or issues in the trial" if such a statement "will interfere with a fair trial." Loc. Crim. R. 57.1(D). Additionally, the District of Columbia Bar—of which Mr. Martin is a member—has clear rules of professional

---

[21] *Id.*

[22] *DOJ weaponization group outlines criminal referral targeting Letitia James, others*, Fox News (Aug. 17, 2025), https://www.foxnews.com/video/6377014112112.

[23] *See* DOJ Justice Manual (JM) 1-7.400 (prohibiting public disclosure of information concerning ongoing criminal investigations); JM 1-7.310 (requiring prosecutors to coordinate news media contacts with DOJ's Office of Public Affairs); JM 9-13.200 (rule governing communications with represented persons); 28 U.S.C § 530B (Ethical Standards for Attorneys for the Government); ABA Model R. Prof'l Conduct 4.2 (Communication with Person Represented by Counsel).

conduct, including Rule 3.8, which outlines the special responsibilities of a prosecutor, prohibiting the kinds of improper and prejudicial actions in which he deliberately engaged with respect to AG James.[24]    Mr. Martin deliberately flouted those rules to create unfavorable pre-indictment publicity.

### 2. Lindsey Halligan, Whose Only Credential is Loyalty, is Installed as U.S. Attorney.

The government engaged in a series of illegal and extraordinary maneuvers to install Lindsey Halligan as the purported U.S. Attorney for the Eastern District of Virginia when no one else would bring the indictment against AG James.  After the Senate-confirmed U.S. Attorney for the Eastern District of Virginia resigned in January 2025, AG Bondi appointed Erik Siebert as interim U.S. Attorney pursuant to 28 U.S.C. § 546.  On May 6, 2025, President Trump submitted Mr. Siebert's nomination to the Senate.  When Mr. Siebert's interim appointment expired on May 21, 2025, the district court judges of the Eastern District of Virginia exercised their appointment authority under Subsection 546(d) and unanimously selected Mr. Siebert as interim U.S. Attorney.[25]

Reports indicate that Mr. Siebert and other prosecutors within the U.S. Attorney's Office were "unable to find incriminating evidence of mortgage fraud against [AG James.]"[26]    But

---

[24] *See, e.g.*, D.C. R. of Prof'l Conduct 8.4(c) ("Engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation"); Rule 8.4(d) ("Engag[ing] in conduct that seriously interferes with the administration of justice"); Rule 8.4(g) ("threaten[ing] to seek criminal charges or disciplinary charges solely to obtain an advantage in a civil matter"); Rule 3.8(a) (Special Responsibilities of a Prosecutor, prohibiting a prosecutor from improperly favoring or invidiously discriminating against a person).

[25] *In re Appointment of Erik S. Siebert as United States Attorney*, Order of Appointment, United States District Court for the Eastern District of Virginia (May 9, 2025), https://perma.cc/2UM3-LX2X.

[26] Katherine Faulders, Peter Charalambous, & Alexander Mallin, *Trump poised to fire US attorney for resisting effort to charge NY AG Letitia James: Sources*, ABC News (Sept. 19, 2025), https://abcnews.go.com/US/trump-poised-fire-us-attorney-resisting-effort-charge/story?id=125700904.

Director Pulte was not willing to let the lack of evidence—or the judgment of career prosecutors—stand in the way of his ambitions to please President Trump. In September 2025, Director Pulte reportedly lobbied the President to fire Mr. Siebert in order to resurrect the failed case against AG James.[27] Reports indicate that in the Oval Office dining room, Director Pulte told the President that Mr. Siebert had been picked for the U.S. Attorney position by Democrats and was "blocking charges against James."[28] President Trump was persuaded by Director Pulte and ordered aides to remove Mr. Siebert.[29] On September 19, 2025, President Trump told reporters in the Oval Office that he wanted Siebert "out."[30] President Trump stated that he believed AG James was "very guilty of something," an assessment that reportedly contradicted the views of both Mr. Siebert and Deputy Attorney General Todd Blanche.[31] Mr. Siebert resigned hours after President Trump called for his ouster.

On September 20, 2025, President Trump posted a statement on social media urging AG Bondi to appoint Lindsey Halligan and prosecute AG James, as well as former FBI Director James Comey and Senator Adam Schiff. The post read:

> Pam: I have reviewed over 30 statements and posts saying that, essentially, "same old story as last time, all talk, no action. Nothing is being done. What about Comey, Adam "Shifty" Schiff, Leticia??? They're all guilty as hell, but nothing is going to be done." Then we almost put in a Democrat supported U.S. Attorney, in Virginia, with a really bad Republican past. A Woke RINO, who was never going to do his job. That's why two of the worst Dem Senators PUSHED him so hard. He even lied to the media and said he quit, and that we had no case. No, I fired him, and there is a GREAT CASE, and many lawyers, and legal pundits, say so. Lindsey Halligan is a really good lawyer, and likes you, a lot. We can't delay any longer,

---

[27] Heeb et al., *supra* note 13.

[28] *Id.*

[29] *Id.*

[30] Salvador Rizzo et al., *Top Virginia prosecutor resigns amid criticism over Letitia James investigation*, Wash. Post (Sept. 20, 2025), https://www.washingtonpost.com/national-security/2025/09/19/trump-letitia-james-erik-siebert-virginia.

[31] Glenn Thrush et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sept. 19. 2025), https://www.nytimes.com/2025/09/19/us/politics/erik-siebert-comey-letitia-james.html.

it's killing our reputation and credibility. They impeached me twice, and indicted me (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED, NOW!!! President DJT.[32]

At the White House that same evening, President Trump spoke to reporters about the social media post and stated, "I just want people to act. They have to act," adding, "We have to act fast."[33]

Less than 48 hours after President Trump's post, AG Bondi purported to appoint Ms. Halligan as interim U.S. Attorney pursuant to 28 U.S.C. § 546.  In early October 2025, Elizabeth Yusi, a high-ranking career prosecutor in Norfolk's U.S. Attorney's Office who had been part of the team leading the investigation into AG James, reportedly informed colleagues she would decline to seek charges against AG James and authored a non-prosecution memo.[34]  Ms. Yusi, who had been with DOJ since 2007 and was serving as the Norfolk Division's Criminal Chief, "confided to co-workers that she [saw] no probable cause to believe James engaged in mortgage fraud" and intended to present her conclusion to Ms. Halligan, the District's new interim U.S. attorney.  *Id.*  Ms. Yusi then suffered the same fate as Mr. Siebert a few weeks later:  she was fired, along with another supervisory Norfolk prosecutor, Kristin Bird, for declining to bring charges.  *Id.*  Ms. Halligan also fired First Assistant U.S. Attorney Maggie Cleary, who briefly led the Norfolk Office after Mr. Siebert resigned.  *Id.*

---

[32] *See* Trump, *supra* note 1.

[33] Jeremy Roebuck, *Trump's new demands on Justice Department raise alarm among prosecutors*, Wash. Post (Sept. 22, 2025), https://www.washingtonpost.com/national-security/2025/09/22/trump-justice-department-prosecutions/.

[34] Carol Leonnig & Ken Dilanian, *Top prosecutor is rejecting Trump pressure to charge New York AG*, MSNBC (Oct. 6, 2025), https://www.ms.now/news/top-prosecutor-trump-pressure-charge-new-york-ag-rcna235922; Katherine Faulders et al., *Evidence appears to undercut claims against Letitia James, prosecutors found: Sources*, ABC News (Oct. 23, 2025), https://abcnews.go.com/US/evidence-appears-undercut-claims-letitia-james-prosecutors-found/story?id=126723989.

### C. After Ignoring the Evidence and Removing Resistance, an Indictment is Returned.

Despite the overwhelming lack of evidence or support from career prosecutors, the Trump-directed quartet of Director Pulte, Mr. Martin, AG Bondi, and Ms. Halligan set out to do what they had been ordered to do: indict AG James.  Director Pulte offered information and aid to Mr. Martin and Ms. Halligan, including on October 6, 2025, when he sent a private letter to Ms. Halligan providing a summary of information and financial calculations on the Peronne Property, including "additional information from Fannie Mae's Financial Crimes Investigation Team regarding the prior Criminal Referral" of AG James.  *See* Ex. I.  On X, Mr. Martin posted photos of himself at FHFA,[35] and, on October 8, with Ms. Halligan reviewing papers.[36]  The morning of October 9, Mr. Martin posted a photo of an eagle flying over the Brooklyn Bridge—an obvious reference to the New York Attorney General, who lives in Brooklyn.[37]  Just a few hours later, Ms. Halligan alone went before a grand jury in Alexandria, Virginia—not in Norfolk, where grand jurors had heard evidence and witnesses for months—and left with a two-count indictment against AG James bearing the exact calculations Director Pulte had sent to Ms. Halligan just a few days prior. "Minutes after James was indicted, Pulte came into the Oval Office to boast that he and Halligan had pulled it off on their own," according to the *Wall Street Journal.*[38]  That evening, Mr. Martin posted on X, "Promises made, Promises kept."[39]

---

[35] *See* Ed Martin (@EdMartinDOJ), X (Aug. 19, 2025), https://perma.cc/N4BD-DA5G.

[36] *See* Ed Martin (@EdMartinDOJ), X (Oct. 8, 2025), https://perma.cc/HC6G-DL7B; Ed Martin (@EdMartinDOJ), X (Oct. 8, 2025), https://perma.cc/X3GT-K6JX.

[37] *See* Ed Martin (@EdMartinDOJ), X (Oct. 9, 2025), https://perma.cc/Q4GF-UHUM.

[38] Heeb et al., *supra* note 13.

[39] Ed Martin (@EagleEdMartin), X (Oct. 9, 2025), https://perma.cc/KK2Q-RXSB.

### III.    ARGUMENT

#### A. The Indictment Against AG James Should Be Dismissed Because This Prosecution Arises from Outrageous Government Conduct.

"Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen," and where "the Government becomes a lawbreaker, it breeds contempt for law." *Olmstead v. United States*, 277 U.S. 438, 471–85 (1928) (Brandeis, J. dissenting).   For this reason, the Due Process Clause of the Fifth Amendment prohibits prosecutions arising from government conduct that is "'shocking,' or 'offensive to traditional notions of fundamental fairness.'"   *Hasan*, 718 F.3d at 343 (quoting *Osborne*, 935 F.2d at 37).[40]   This type of conduct "do[es] more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically," *Rochin v. California*, 342 U.S. 165, 172 (1952), but rather violates the very foundations of justice and fairness.   Thus, where the government's actions are "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction," *United States v. Russell*, 411 U.S. 423, 431–32 (1973), an indictment must be dismissed.

Dismissal of indictments for outrageous government conduct typically occur where the government has participated in or caused the criminal act underlying an indictment or resorted to pure brutality to gain access to information.  *See, e.g.*, *Hampton v. United States*, 425 U.S. 484 (1976) (plurality opinion); *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978).  No doubt, the government will point to these cases to claim, erroneously, that only crimes and torture meet the

---

[40] The outrageous government conduct defense is distinct from an entrapment defense.  As the Fourth Circuit has explained, "[u]nlike the constitutional defense of outrageous government conduct, where the focus is on the action taken by the government, the statutory defense of entrapment centers inquiry on the issue of the defendant's predisposition to commit the crime in question." *Osborne*, 935 F.2d at 37.  While the entrapment defense is raised at trial for the jury, a due process challenge is made before trial, focusing on the government's actions.

"shocks the conscious" threshold. But it is axiomatic that due process is not subject to rigid rules, particularly in unprecedented circumstances. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) ("Rules of due process are not . . . subject to mechanical application in unfamiliar territory."). Whether the government's willingness to abuse its power and break its own rules and systems to obtain this indictment can sufficiently "shock the conscience" to require dismissal of an indictment is an issue of first impression.

"[T]he measure of what is conscience shocking is no calibrated yard stick," *Lewis*, 523 U.S. at 847, but "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849. And "the higher the official and the more that the official is charged with the responsibility of furthering justice, the more shocking certain conduct becomes and the greater are its risks to the rudimentary demands of justice and any concept of ordered liberty." *Herndon v. Johnson*, 1992 WL 152713, at *21 (E.D. Mich. Apr. 7, 1992).

As the facts illustrate, Director Pulte, Mr. Martin, AG Bondi, and Ms. Halligan do not believe themselves bound by the Constitution, federal statutes, or fundamental ethical norms. They intend to punish AG James for daring to take a stand against the President—both in this Court and by making the investigation of her so public and intrusive that the pre-trial process itself serves as punishment. Director Pulte abused his position as FHFA Director to direct an investigation of AG James, outside of the normal processes and rules governing the agency, despite being told repeatedly that there was no evidence of wrongdoing. Mr. Martin, fearing that the investigation would not result in an indictment, went on a campaign to "name and shame" AG James, and threatened her with prosecution in a last-ditch attempt to force her resignation. And AG Bondi and Ms. Halligan usurped an office that Ms. Halligan was statutorily prohibited from claiming and

14

fired career prosecutors in order to secure this indictment.  Each of these actors worked in concert to morph a threadbare theory into a federal prosecution.  Their actions have demonstrated a "complete lack of respect for the constitutional rights of the defendant [] and an utter disregard for the government's ethical obligations," *United States v. Marshank*, 777 F. Supp. 1507, 1524 (N.D. Cal. 1991), and are therefore sufficiently "outrageous" as to require dismissal of the indictment for violation of AG James's Fifth Amendment rights.

### B. This Court Should Exercise Its Supervisory Powers to Dismiss the Indictment.

Federal courts' supervisory powers exist "to implement a remedy for violation of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, and finally, as a remedy designed to deter illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983) (internal citations omitted).  They "can be utilized whenever the administration of justice is tainted."  *United States v. Banks*, 383 F. Supp. 389, 392 (D.S.D. 1974).  Courts use their supervisory powers to dismiss indictments with prejudice where "there is '(1) flagrant misbehavior and (2) substantial prejudice,'" and where there is "'no lesser remedial action' available."  *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020). "A court may exercise its supervisory powers to dismiss an indictment in response to outrageous government conduct that falls short of a due process violation."  *United States v. Ross*, 372 F.3d 1097, 1109 (9th Cir. 2004).

Here, the government's conduct has offended the very core of due process principles by completely reshaping a government agency (without any legal authority) to investigate AG James, flouting ethical rules and norms of investigation, threatening AG James with indictment to force her resignation, and violating federal statutes and Constitutional separation of powers principles. The charges she now faces are inextricably linked to the government's illegal and unethical

investigatory techniques.  It is true that these violations do not fit neatly within pre-existing "outrageous government conduct" jurisprudence, or within other clear categories of due process violations.  But the administration of justice in this case has been irreparably tainted.  The only remedy sufficient to vindicate AG James's rights is dismissal with prejudice, as "egregious government conduct may violate due process and prevent the reprosecution of a defendant." *United States v. Dyess*, 478 F.3d 224, 234 (4th Cir. 2007).

### C. In the Alternative, Attorney General James is Entitled to Discovery to Further Demonstrate the Illegal Basis for the Charges Against Her.

The current record of "outrageous conduct" is more than sufficient to dismiss this indictment.  But even if this Court finds that AG James should be required to point to more to meet her burden to prove outrageous government conduct, the basis for discovery and an evidentiary hearing has been well established.  The facts outlined above merit, at the very least, fulsome discovery into the government's conduct in bringing this case, including all communications among and between President Trump, AG Bondi, Ms. Halligan, Mr. Martin, Director Pulte, and their staffs regarding AG James.

Additionally, the government is likely already in possession of discovery relating to Director Pulte's conduct that has not been produced to AG James.  Specifically, there is reason to believe that documents reportedly turned over by former FHFA Acting Inspector General, including the internal complaint about Director Pulte's access to AG James's loan file, have not been produced.  Based on metadata (including filename/file path) and the presence of an additional Bates stamp (FM_EDVA_122_), over 100 pages of discovery likely turned over by the former FHFA Acting Inspector General has not been produced.

Accordingly, in addition to the communications listed above, AG James specifically requests that the government be ordered to produce:

- Any internal complaints filed against Director Pulte related to AG James.

- All documents bearing a "FM_EDVA_122_" Bates stamp, including:

  - FM_EDVA_122_0000015–FM_EDVA_122_0000023

  - FM_EDVA_122_0000042–FM_EDVA_122_0000055

  - FM_EDVA_122_0000099–FM_EDVA_122_0000107

  - FM_EDVA_122_0000113–FM_EDVA_122_0000125

  - FM_EDVA_122_0000144–FM_EDVA_122_0000155

  - FM_EDVA_122_0000574–FM_EDVA_122_0000579

## IV.    CONCLUSION

AG James respectfully requests that the Court issue an order dismissing the indictment with prejudice for outrageous government conduct, or, in the alternative, issue an order granting discovery concerning the government's outrageous government conduct, and an evidentiary hearing regarding the same.


Dated: November 17, 2025                          Respectfully submitted,

/s/ Abbe David Lowell                             /s/ Andrew Bosse
Abbe David Lowell (*admitted pro hac vice*)       Andrew Bosse (VSB No. 98616)
David A. Kolansky (*admitted pro hac vice*)       BAUGHMAN KROUP BOSSE PLLC
Isabella M. Oishi (*admitted pro hac vice*)       500 E. Main Street, Suite 1400
Schuyler J. Standley (*admitted pro hac vice*)    Norfolk, VA 23510
John P. Bolen (*admitted pro hac vice*)           Tel: (757) 916-5771
LOWELL & ASSOCIATES, PLLC                         ABosse@bkbfirm.com
1250 H Street NW, Suite 250
Washington, DC 20005
Tel: 202-964-6110
Fax: 202-964-6116
ALowellpublicoutreach@lowellandassociates.com

DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com

*Attorneys for Letitia A. James*